## SUPREME COURT.

### The People of the State of New York agt. The Globe Mutual Life Insurance Company.

*Insurance (life) — Contracts with general agents for a stipulated number of years, at a specified yearly salary, ends with the corporate dissolution by the action of the state, and the agent has no valid claim for damages for an alleged breach of the agreement by the company — So, too, as to the procurement of policies of insurance and per centage upon same, and also as to per centage upon renewal premiums.*

When a life insurance company has contracted with a person to act as its general agent for a stipulated number of years, at a specified yearly salary, and the company becomes insolvent and passes into the hands of a receiver, and is also dissolved by the action of the state before the expiration of the term for which such agent was hired, the agent has no legal right to recover from the funds in the hands of the receiver the salary fixed by the agreement for the unexpired term of service, as damages for not continuing the employment; the contract ends with the corporate dissolution by the action of the state, and because such action prevented further service, the agent has no valid claim for damages for an alleged breach of the agreement by the company.

When, by the contract between the general agent and the company, the former is, upon the procurement by him of a policy of insurance, to be paid a certain per cent upon the first premium received from the insured, and also a per centage upon every renewal premium thereafter paid, and the payment of renewal premiums upon policies of insurance procured by such agent is prevented by the insolvency of the company, the appointment of a receiver and its dissolution by the state, no damages can be recovered by such agent by reason of the non-renewal of policies, which he had procured prior to such insolvency, receivership and corporate death.

When a general agent, whose compensation depended in part upon his success in procuring policies of insurances, to be taken in a life insur-

ance company, upon which policies, when procured by him, he was to receive an agreed per centage upon the premiums paid, is before the expiration of the period for which he was employed by such company, prevented by the insolvency receivership and dissolution of such company, at the suit of the people of the state, from obtaining in it further policies of insurance, he is not entitled to damages by reason of his being thus deprived of the opportunity to earn money during the unexpired term of his agency by procuring policies of insurance in such company.

*Ulster Special Term, October,* 1882.

MOTION to confirm referee's report respecting the claims of the " general agents " of the corporation for damages growing out of contracts for service.

*George W. Wingate,* for receiver.

*Edward C. James,* for agents.

*William D. Whiting,* for policyholders.

*Lucius McAdam,* for policyholders.

*Raphael J. Moses,* for policyholders.

WESTBROOK, *J.* — The reports of the referee, William McDermott, rejecting the claim of Jas. D. Wells, who was the general agent of the defendant for the Dominion of Canada, and that of James C. Mix, who was its general agent at Syracuse, in the state of New York, presents three questions:

*First.* When a life insurance company has contracted with a person to act as its general agent for a stipulated number of years, at a specified yearly salary, and the company becomes insolvent and passes into the hands of a receiver, and is also dissolved by the action of the state, before the expiration of the term for which such agent was hired, has the agent any legal right to recover from the fund in the hands of the receiver the salary fixed by the agreement, for the unexpired term of service, as damages for not continuing the employ-

ment; or did the contract end with the corporate dissolution by the action of the state, and because such action prevented further service, has the agent no valid claim for damages for an alleged breach of the agreement by the company?

*Second.* When by the contract between the general agent and the company, the former is, upon the procurement by him of a policy of insurance, to be paid a certain per cent upon the first premium received from the insured, and also a per centage upon every renewal premium thereafter paid, and the payment of renewal premiums upon policies of insurance procured by such agent is prevented by the insolvency of the company, the appointment of a receiver and its dissolution by the state, what damages, if any, can such agent recover by reason of the non-renewal of policies, which he had procured prior to such insolvency receivership, and corporate death?

*Third.* When a general agent, whose compensation depended in part upon his success in procuring policies of insurance to be taken in a life insurance company, upon which policies, when procured by him, he was to receive an agreed per centage upon the premiums paid, is, before the expiration of the period for which he was employed by such company, prevented by the insolvency receivership and dissolution of such company, at the suit of the people of the state, from obtaining in it further policies of insurance, what damages, if any, is he entitled to by reason of his being thus deprived of the opportunity to earn money during the unexpired term of his agency, by procuring policies of insurance in such company?

These questions are to be answered in a proceeding affecting a fund in the hands of a receiver of an insolvent and dissolved corporation for distribution, and in the light of the consequences to such fund depending upon such answers. Whatever sum is allowed to either of these general agents as damages is really so much taken from a fund created by premiums paid for insurance by policyholders, who are also seeking, by the recovery of damages for a broken agreement

to insure, to get back a part of the money actually paid for insurance, and of which they have been deprived. The assets of the defunct and dissolved corporation are insufficient to make good the loss of the parties who placed their money into the hands of its agents and officers in the hope and belief that they would so manage and conduct its affairs as to indemnify them or their families according to the terms of the contracts given to them at the time of the payment of their premiums.

A corporate body manifests its life only through officers and agents. When the latter speak or act in behalf of the corporation, such speech or act is that of the artificial being which they represent. Viewing the claims made by these agents, which the referee has rejected, in the light of the *status* which they occupied towards the policyholders, it is impossible to see upon what equitable grounds, at least, they can share in the fund for distribution with those whose means created it. The questions propounded are not to be answered upon the theory that an action has been brought against a corporation still in being, by its general agents, for breaches of its contract with them, and of its duties towards them. If that was the case the arguments of the learned counsel for the claimants would, perhaps, be unanswerable. It is impossible to deny that the corporate body and its superior officers do owe certain duties to some of its employes, at least, with whom it makes contracts of service. There must be, however, when a corporate body has become insolvent, some limit to the application of this rule, for there may be officers of a corporation having with it contracts for service who, from their official positions, were so identified with its management as to be estopped from claiming damages against it for their non-fulfillment by reason of insolvency. This exception to the general rule of corporate liability for a breach of contract, caused by inability to perform, is evident. The difficulty consists in its application and in the designation of those who must be deemed a part of the management which

caused the bankruptcy. In determining a question of this character it is certainly not inequitable, at least, to consider the effect of a claim made by an officer of a dissolved corporation upon the fund to be distributed among its creditors, which is based upon an alleged failure of duty towards him in maintaining its financial standing, and the consequences of its allowance upon the rights of others to share in that fund, who were in no way connected with its management, and in regard to whose demands there cannot be even a quibble. Let us, then, examine this case from this standpoint.

Before the court, as rival claimants of the fund in its hands, on the one hand are the officers of the company — its general agents — who are in part at least responsible for its condition; and on the other, individuals who parted with their money, on the faith of representations made by the persons claiming adversely to them, for insurance and protection which they never have, and never can obtain. In determining between these opposing and conflicting claims, it is impossible to close our eyes to the fact that in the making of contracts of insurance, as between the insurer and insured, the general agents, who are claimants, represented the former. Whether such agents acted in good faith or in bad faith, with knowledge of the insolvency of the corporation, or without such knowledge, in either they represented the corporation. It was their action, their arguments and their persuasions which prevailed with the insured to accept the contracts of the corporation now insolvent and in receiver's hands, and to place them upon an equality with those for whose unfortunate condition they are responsible, would be equivalent to making an injured party pay the individual injuring him for the labor of inflicting it. This result, so contrary to reason and justice, ought not to flow from the adoption of any supposed legal rule for our guidance, for the law, being the perfection of both reason and justice, can do violence to neither. As the corporate being, now dead and dissolved, acted through agents, of whom the claimants formed a part,

their acts toward the insured were those of the corporation, and in considering and disposing of the two classes of claims upon a fund for distribution, the fact cannot be overlooked, that while agents, for services rendered and agreed to be rendered, may in some cases have valid claims against the corporation whose servants they were, if it was still in being, having property and funds belonging to it, yet that they cannot have such claims allowed as against persons or parties toward whom they occupied the position of insurer, and who were induced by them to take contracts of insurance in a corporation which was unable to fulfill its obligations.

The equity of the foregoing line of thought is apparent, and the only plausible answer, as it seems to me, which can be made to it is, that the statute (*chap.* 902, *Laws of* 1869, *sec.* 8) provides, in the case of an insolvent registered company (and the Globe life was such an one), after paying all registered policies in full, the remainder of the fund arising from the conversion of its assets into money, "shall be then applied to the payment of all the just debts of said company incurred in the conducting and carrying on its lawful business."

The argument on the part of the claimant is, that the corporation had a right to make contracts of service for a term of years, and that insolvency and inability on its part to perform them, and even the action of the state, taking the corporate life, did not excuse non-performance, so as to bar a claim for the damages flowing from such non-performance, because, as it is said, the corporation owed to them, as it did to policyholders, the duty of keeping itself solvent.

This argument, which has been already partially answered, is certainly plausible, and upon the presentation of these cases it impressed me favorably. Further reflection, however, satisfied me that, as its adoption in this case will result in absolute injustice to the policyholders, the law must make some distinction between the classes of contracts, or the individuals towards which or whom it applies the doctrine, that the act of the state extinguishing the corporate life does not

bar a claim for damages for non-performance, when the action of the state was induced by the misconduct of the corporation. Undoubtedly the rule contended for by the counsel of these claimants, is applicable to policyholders (*Security case*, 78 *N. Y.*, 115, 125), and may be to other persons. Is it applicable, however, to the parties whom he represents?

James D. Wells, one of the claimants, agreed to serve the corporation for ten years, from July 15, 1876, as its "general agent" for the "Dominion of Canada," and the other, James C. Mix, for five years from April 22, 1877, as its "general agent at Syracuse." Both have been paid the stipulated salary for the term of actual service, but both claim the damages they allege to have been sustained by the non-payment of salary during the unexpired term of their contracts; and both claim such damages as they aver were caused to them by the dissolution of the corporation, flowing from the non-renewal of policies obtained, and their inability to procure new and other policies during the unexpired terms of their agencies. The validity of these claims depends upon the effect of the state's action in preventing the corporation from continuing its business. The claimants insists, as has been already stated, that the act of the state in ending the life of the corporation cannot absolve it from performing its contracts, nor bar the claims for damages because as to them, as to the policyholders, it owes the duty of preserving its solvency. The report and conclusions of the referee, on the other hand, are, that the act of the state, terminating as it did the corporate existence, absolutely excused performance of the contracts, and that as no renewal premiums could thereafter be received, nor further business done, the claimants, by the terms of their contracts, cannot obtain a per centage upon premiums never to be paid, nor obtain damages based upon future business, which can never be transacted. Which of these views is sound?

In answering the question just propounded, it is not nec-

essary, as already intimated, to lay down a general rule of law to be applicable to every contract made by a life insurance company in regard to future service, or any other subject, nor will such an attempt be made.   We are dealing now only with those before us, and to and of them the discussion relates.

The claimants were, as just mentioned, general agents of the Globe Mutual Life Insurance Company, each having a locality, the business in which he supervised.   Each knew when his contract was made, that its value, and its continuance, depended upon the management of the corporation, which if careless, void of judgment or dishonest, could only terminate in proceedings by the state which would end its life, and prevent the further execution of the agreement.   The contracts entered into between the claimants and the company made the former a part of the managing and directing force of the latter.   To the outside public, and especially to those persons who by their action or that of their associates, were induced to take out policies of insurance in the company of which these claimants were important officers, they were the company.   Possibly they were not personally sharers in the mismanagement which has resulted in the company's insolvency and death, but their associates were; and when a court has before it for adjudication claims based upon contracts for service in the corporate management, and others founded upon agreements entirely distinct therefrom — those with policyholders for example — it cannot fail to see a wide distinction between them as to their meritorious character.   The agreements under consideration made under the circumstances which have been stated, must be held to end with the legal death of one of the contracting parties, such death, as the natural death of one of two individual contracting parties, giving no cause of action for damages on account of non-performance, because performance has become impossible.   This result follows for two reasons:   First. They were contracts for services which could only be rendered if the corporation continued in being, and subject to the contingency of its death,

and in view of its possibility they were entered into. As failure in business is always possible, because it is subject to many surroundings, the parties who made them must be held to have taken upon themselves that risk, and when the corporate death occurred, the agreements of service were as completely terminated, without any claim for damages, as if an express provision to that effect had been contained in the written instruments which evidenced them; and, second, because these claimants were, by their contracts for service, so united to the corporate management as to share its responsibilities. The corporate being, upon the misconduct of which their claims for compensation are based, could not, as an individual, personally mismanage its affairs. Such mismanagement was that of those who superintended and controlled its business, and among those were these claimants. Probably others were their superiors, but when a corporation becomes insolvent, subjecting many persons to grievous loss, it is impossible in determining and selecting those who are to be indemnified, as far as possible, out of its assets, to nicely weigh the official conduct of every individual connected with its management. Men must often be held accountable for the misconduct of those with whom they voluntarily associate themselves in the conduct of a business; and, as these claimants were so associated, and, in making contracts with others, they were clearly the representatives of the corporation — their words, acts and deeds those of a corporation — the corporate management of which they complain must be held to be theirs, and therefore giving them no claim for damages, which makes for them a just debt against the corporation, thus enabling them to share with those with whom they contracted in the corporate name, the remnants of trust funds, which have been squandered and wasted by almost criminal mismanagement.

In reaching the conclusion just announced, it is proper to say that I have been unable to find a case precisely like the present, though reference was made upon the argument to

several. The one which most nearly approximates it, is *Commonwealth* agt. *Eagle Fire Insurance Company* (14 *Allen*, 344). In that, the president, on January 1, 1862, had, by the action of the directors of the corporation, been voted a salary of $1,000 per annum "for the present, or until the success of the company is firmly established." Subsequently, upon the petition of the insurance commissioners of the state (Massachusetts), alleging, "that the condition of the Eagle Fire Insurance Company was such as to render its further proceedings hazardous to the public, and to those holding its policies," an injunction was granted restraining the company from proceeding further with its business. This injunction was afterward modified so as to permit the company to elect officers, and do all acts necessary to continue its corporate life, until its affairs should be closed. As the president acted as such, during the semi-corporate life, he claimed the full salary originally ordered by the directors. This claim was refused, the court saying : " The president of the company did not render all the services for which his salary was to be paid, the exercise of his office having been suspended by legal authority." In other words, it was held, that the act of the state ended the contract.

For the reasons which have been stated, and upon the authority of the decision just referred to, the claims of Mr. Wells and of Mr. Mix, for damages caused by the non-fulfillment of their contracts by the corporation, must be disallowed. The agreements for future service terminated with the death of the company by the action of the state. A few words must be added in regard to the renewal premiums upon policies obtained by them prior to the insolvency of the corporation, and which renewals such insolvency prevented. The point made in their behalf is, that they are entitled to such damages because their per centage upon renewal premiums would have compensated them for past services actually performed, and as such renewals were prevented by the act of the company, they are entitled to be made good for that of

which they have been thus deprived. It has already been shown, that the act of the company so-called, was one for which they must share the responsibility; but there is another reason for the rejection of the demands based upon the loss of renewal premiums, which will now be stated, and it is this: By the terms of their contracts they were entitled only to commissions upon premiums actually received by the company, and as it is conceded that none have been received, nor ever will be, no commissions are due.

*Ensworth* agt. *The New York Life Insurance Company* (1 *Bigelow's Ins. Cases*, 645); *Lewis* agt. *Atlas Mutual Life Insurance Company* (61 *Mo.*, 534); *5th Bigelow's Insurance Cases*, 239; *and Ætna Life Insurance Company* agt. *Nixon* (*an Indiana decision, reported in vol.* 11 *of the Insurance Law Journal, page* 570), which have been cited as decisive of the question, were all cases between agents and existing corporations, and in neither had the state intervened and terminated the life, and in neither was the right to recover per centage upon renewal premiums which could never be received, considered or discussed. Neither is therefore applicable to the present.

In *Hercules Mutual Life* agt. *Brinker* (77 *N. Y.*, 435), an agent had been discharged, and in an action brought against him by the company for money in his hands, the court held that he could offset his per centage upon renewal premiums actually received by the corporation, which were paid upon policies he had procured prior to the termination of his agency. The case presented no claim for damages arising from the non-receipt of premiums prevented by insolvency, but the language and reasoning of the court is against the validity of any such claim. This is apparent from the prevailing opinion by judge DANFORTH, who (*see page* 445) says: "The contention of the plaintiffs' counsel is, therefore, against the plain language of the agreement, when he argues that commissions were to be paid Fleischl only on premiums actually collected and paid to the society by him. The commis-

sions, by whomsoever the premiums are collected, are to be paid by the society to Fleischl as due of business obtained by him or his agents. He acquired a right to them the moment a policy was issued; payment, however, depends upon their collection by the company through him or some other person — as to that he takes the risk — but so long as the premiums are paid to the company, he is entitled to his commissions. * * * For ought that appeared upon the trial the policies were still alive, and renewal premiums paid. Whether this was the case or not was known to the plaintiff, and could not be known to the defendant, and the burthen was thus upon the plaintiff to show what, in this respect, the fact was. In the absence of all evidence, the presumption is in favor of the existence rather than the lapse and cancellation of a policy."

Perhaps the extract from the opinion of judge DANFORTH just given, needs no explanation to show its application. It may be proper, however, to add, that the plaintiff's point in the case referred to, that when the agent was discharged his right to commissions upon renewal premiums ended, because the agent would no longer collect them, was overruled. The court held, no matter by whom such premiums were collected, so long as the company received them, entitled the agent to his commissions; but it was also further decided, that his right to such commissions depended upon the collection of the premiums "by the company through him or some other person — as to that he takes the risk — but so long as the premiums upon the policies are paid to the company he is entitled to his commission."

The case is clearly decisive of the point under consideration. No contract can be made for parties differing from that which they make for themselves. By the terms of those made in the present instance, the parties performing the service elected to receive as a compensation therefor not a gross sum, but a per centage upon premiums actually received. Unless such premiums were actually received, by the provi-

sions of the agreements, nothing was due. That they have not been paid, and never will be, was conceded, and as the act of the state in ending the corporation's life gave to those claimants no cause of action for a breach of contract, it follows that the non-payment of premiums, because of the corporate dissolution, gave to them no right of action to recover damages on account of such non-payment, which the death caused.

The same reasoning reaches the claims made for damages on account of future business, which could not be done by reason of the failure of the company. With the ending of the corporate existence the contract also terminated, and no cause of action for such termination survived to the plaintiff. There being no right to continue the service, there can be no future earnings; and as the prohibition to continue the corporate business must prevent the obtainment of other policies of insurance, there cannot possibly be an allowance of damages based upon the possibilities of future earnings, which it is plain can never be made.

The report of the referee upon these two claims are sustained, and the exceptions taken thereto are overruled. To prevent any confusion growing out of the alleged want of power in the referee to decide the questions involved, the order to be entered must affirmatively disallow and reject the claims.