MARTIN ROSENBAUM v. UNITED STATES CREDIT SYSTEM
COMPANY.

1. Under a contract that during the first three years of its existence, the plaintiff will, during each consecutive three months thereof, procure new business to a specified amount, the contract running from December 1st, 1892, it is not a good plea to aver that during three consecutive months, to wit, the months of May, June and July, in the year 1894, the plaintiff did not procure such new business. The contract is that in each consecutive three months during the first three years the amount of business agreed upon shall be procured ; that is equivalent to saying during each consecutive quarter commencing December 1st, 1892.

2. The defendant appointed the plaintiff its agent, for the State of Massachusetts, for the term of five years, for which he was to receive a specified percentage of the business he procured in that state. The company, on the 23d of August, 1894, was declared to be insolvent by a decree of the Court of Chancery of this state, a receiver appointed, and the charter of the company declared to be forfeited and void. *Held,* that an action cannot be maintained by the plaintiff to recover damages from the receiver, because the plaintiff was not continued after that date in such employment as agent under the contract.

3. A plea that the plaintiff was not authorized to transact business in which he was engaged, that it was unlawful to engage in such business, is a good plea.

4. No one can be constrained to do an act against the law, nor can he be cast in damages for the refusal or neglect to do such act or permit it to be done.

On demurrer to pleas.

Argued at February Term, 1897, before MAGIE, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff, *Richard Wayne Parker.*

By the declaration Rosenbaum was employed under a written contract as defendant's agent, for five years, in the State of Massachusetts. The declaration states that within two years the company ceased to employ the plaintiff, and alleges breach of covenant, damage and loss. This suit was begun

and declaration filed under an order of the Court of Chancery in receivership proceedings against the United States Credit System Company, and this suit was ordered by the Court of Chancery as a means of settling these damages as claimed by the plaintiff in this receivership.

I. The first plea is *non est factum*, and issue is joined.

II. The second plea alleges that, by the contract, the plaintiff was disabled from engaging in the guarantee business for three years after he ceased to be defendant's agent, and avers that this was an unreasonable restriction as to territory. The plaintiff had traversed this plea, but it perhaps deserves the attention of the court, whether the plea itself is good, and whether the whole agreement of agency can be invalidated, even if the illegality may have crept into a collateral provision of this sort.

III. The contract is dated December 1st, 1892. By its fourth clause, it is agreed by the plaintiff that "during the first three years of the existence of this contract he will, during each consecutive three months thereof, procure new business," to a certain extent.

The third plea alleges "that, during three consecutive months, during the first three years of the existence of said contract, to wit, the months of May, June and July, eighteen hundred and ninety-four, the said plaintiff did not procure new business," &c. To this the plaintiff demurs. The contract does not provide that such new business should be procured in each "three consecutive months," as alleged in the plea, but in each "consecutive three months," which is equivalent to saying each consecutive quarter. The months of May, June and July, alleged in the plea, are not such a quarter, but such a quarter would be June, July and August. The first quarter contemplated by the agreement would be December, January and February; the second, March, April and May; the third, June, July and August. The plea does not allege any breach of the contract which provided for securing new business during each consecutive period of three months, and not by taking part of the time from the end of

one period and putting in on the beginning of the other, and thus creating a new period of three consecutive months.

IV. The fourth plea is likewise demurred to for the same reason. It pleads that "during three consecutive months during the first three years of the existence of said contract the said plaintiff did not procure new business."

V. The fifth plea alleges substantially that the defendant became insolvent, and ceased to employ the plaintiff, because it was enjoined from doing business by the Court of Chancery. It is in form a special traverse, alleging these chancery proceedings " without this that the defendant abrogated the contract, or broke its covenant." This is the first time that it has ever been suggested in the courts of New Jersey that a contract is annulled by insolvency and need not be performed. The statutes of this state provide for recovery of unliquidated damages, caused by failure to perform, such breach of contract resulting from the insolvency of a corporation.

VI. The sixth plea alleges a Massachusetts insurance statute, providing first that only certain classes of risks should be the subject of insurance in that state; and secondly, that no foreign insurance company should be authorized to do business until it should deposit a copy of its charter, satisfy the commissioner as to its organization and assets, file an authority to acknowledge process, appoint resident agents, and obtain a certificate of such authority. The plea concludes (*a*) that the defendant, the United States Credit System Company, was not authorized to transact insurance; (*b*) that the plaintiff was not authorized to transact the business as agent, and (*c*) that it was unlawful to engage in the business of indemnifying any person against excess losses from credit in said commonwealth, and therefore the contract was void.

To this the plaintiff demurs for several reasons:

*First.* Duplicity. The plea alleges that the defendant had not authority, that the plaintiff had not authority, and that the business was unlawful, as three separate reasons why the whole contract was void. This is duplicity in pleading. The plaintiff cannot answer all these matters at once, either

by traverse or demurrer; but I take these matters singly, and as if they had been alleged by separate pleas, so that we may dispose of the matter now.

*Second.* The contract shows that the credit system company, the defendant, was a resident of New Jersey, and the plaintiff of Illinois, and that the defendant appointed the plaintiff its agent for certain business to be performed in Massachusetts. By that contract, it guaranteed to such agent its right so to employ him. He was not bound to take notice of the law of a foreign state, and that law cannot make that contract illegal. It seems to have been made in New Jersey, so far as shown by the pleadings.

*Third.* The defendant certainly guaranteed to the plaintiff that it would take all proper measures, under the law of that State, to qualify itself for that business, and to qualify its agents to perform it, and if the general statements of this plea mean to allege that the credit system company failed to take these proceedings to file its charter and to do what was required by the Massachusetts statute, its failure so to do was clearly of itself a breach of the contract and did not bar the plaintiff.

*Fourth.* The business of credit system insurance was not unlawful under the act by which insurance companies may be formed "to act as surety on official bonds and for the performance of other obligations." The insurance of a debt is the insurance of the performance of the obligation of that debt. The word "obligation" has a broad meaning in the law. It means whatever is of legal binding force. A debt is an obligation and can therefore be insured. See Bouvier on the word, defining it:

"A tie which binds us to pay or do something agreeable to the laws and customs of the country in which the obligation is made." *Bouv. Inst.* 3, 16.

"A civil obligation is one which has a binding operation in law and which gives to obligee the right of enforcing it in a court of justice; in other words, it is an engagement binding on the obligor." 4 *Wheat.* 197; 12 *Id.* 318, 337.

"An implied obligation is one which arises by operation of law, *e. g.*, if I send you daily a loaf of bread without any express authority, and you make use of it in your family, the law raises an obligation on your part to pay me the value of the bread."

*Cf.* obligation of contracts, where the word has the proper meaning.

Bond or other obligation means not simply bonds but all other obligations.

Debts are obligations, civil obligations, which the law will enforce.

I am aware that since the insolvency of this company a contract of insurance, made by this very company in the State of Massachusetts, was held void in the Court of Appeals, after recovery in the lower court, on the ground that this company was not lawfully doing business in the State of Massachusetts. The point was suggested in the Court of Appeals by the court. It was beyond question that the company had failed in their duty to file their certificate and charter, and obtain the authority necessary from the commissioner of insurance. The case had to be therefore abandoned, and briefs on the point were not sent in as suggested by the court, who, in the case (*Claflin* v. *United States Credit System Co.*, 165 *Mass.* 501), say :

"No authority is given by the statute of 1887 (*ch.* 214) to any insurer, domestic or foreign, to insure mercantile credits or accounts. So far as the record before us shows, the defendant has not been admitted to transact business in this commonwealth. The contract sued on seems to be made unlawful by the provisions of the statute of 1887 (*ch.* 214, ¶ 3), both for the reason that the defendant has not been admitted to transact insurance here and because insurance of credits or accounts is not authorized by the statute."

This is all that is said on the subject. The opinion is clearly right in holding the contract void on the ground that the company had not taken out an authority, but the statement or *dictum* of the court that such authority could not

have been granted is clearly wrong. To insure the performance of obligations is just what this company did. There was nothing unlawful in its contract with Rosenbaum that they would employ him in that business in the State of Massachusetts, and their failure to file their certificate and obtain the commissioner's authority to do business was simply a breach of their contract with him, and the plea is therefore no answer to the declaration but rather the statement of an additional breach thereof.

For the defendant, *Howard W. Hayes.*

The action comes before the court on separate demurrers interposed by the plaintiff to the third, fourth, fifth and sixth pleas of the defendant. The declaration sets out a contract of service by which the plaintiff was appointed the defendant's agent for the State of Massachusetts for the period of five years from December 1st, 1892, and alleges that, on the 23d day of August, 1894, the defendant, without fault of the plaintiff, ceased further to employ him and abrogated its contract. He therefore claims damages. As appears from the declaration, the contract contains this provision :

"It is further agreed by the party of the second part [the plaintiff] that, during the first three years of the existence of this contract, he will, during each consecutive three months thereof, procure new business from parties who have never been guaranteed by this company prior to the procurement of said business, which said business shall be such as is accepted by said company, and shall be actually paid for, to an amount not less than one hundred and twenty-five thousand dollars ($125,000) for each of said three months, and in case of his failure so to do the said company shall have the right, which is hereby expressly reserved, to terminate this contract in its discretion."

The third and fourth pleas are intended to meet this clause in the contract. They each allege that, " during three consecutive months during the first three years of the existence of the said contract, the plaintiff did not procure new busi-

ness from parties who had never been guaranteed by the defendant prior to the procurement of said business, to the amount of one hundred and twenty-five thousand dollars," and that the defendant therefore terminated the said contract. The third plea also names the three months during which the required amount of business was not procured, viz., May, June and July, 1894.

These pleas would seem to present a good defence to the plaintiff's action.

The fifth plea raises an interesting question. It sets up the pendency in the Court of Chancery of a suit brought by the commissioner of insurance against this defendant, and orders made in that suit adjudging the defendant insolvent, appointing a receiver and enjoining the defendant from further carrying on business. It also sets up a further order in the same cause forfeiting the defendant's charter, and it alleges that the defendant ceased further to employ the plaintiff "in pursuance of the said orders." That plea was intended to bring the case under *People* v. *Globe Insurance Co.*, 64 *How. Pr.* 240.

That case decides that a contract made by a life insurance company with a general agent "for a stipulated number of years, at a specified yearly salary, ends with the corporate dissolution by the action of the state, and the agent has no valid claim for damages for an alleged breach of the agreement by the company. So, too, as to the procurement of policies of insurance and percentage upon the same and also as to percentage upon renewal premiums."

The sixth plea sets up the Massachusetts statute, which makes it illegal to carry on in Massachusetts the business for which the plaintiff was employed, viz., insuring credits; and forbids any kind of insurance business from being carried on in the state unless the insurer has received permission from the insurance commission. It also makes allegations (negativing the statutory requirements) that neither the plaintiff nor the defendant ever was authorized to transact any insur-

ance business in Massachusetts; and that from the time of the execution of the contract to the time of its breach it was unlawful to carry on the business of insuring credits in Massachusetts.

The Massachusetts Supreme Court has lately construed that statute as applicable to credit insurance, and has decided that the business is illegal in Massachusetts. The case is *Claflin* v. *United States Credit System Co.*, 43 *N. E. Rep.* 293. That decision goes to the length of holding that a policyholder cannot recover against the company, as the contract of insurance is prohibited by law, and therefore void. In this case the court is not asked to go to that length. It may well be that when a statutory prohibition is for the protection of the insured, he is not *in pari delicto* with the insurer. But in this case both parties are insurers, and the contract between them contemplates a joint violation of law. The question therefore is as to whether an agreement to contravene the laws of another state is unlawful and unenforceable in our courts. That unquestionably is the general rule. The only exceptions are contracts to violate revenue laws of foreign countries. The cases go no further than that, and the justice of the rule itself is strongly decried by the highest authorities. *La Jeune Eugenie*, 2 *Mason* 459, 460; 3 *Kent* 266, 267; *Whart. Confl. L.*, §§ 484, 485; *Westl. Pr. Int. L.* 231, 238.

That rule, however, even if followed by this court, does not apply to this case. The law that the parties to the contract agree to violate is not a law of a foreign country, but of a sister state, whose laws are not recognized merely through comity, but because the constitution of the United States provides that full faith and credit shall be given to them. Further than that, this contract was to be performed in Massachusetts, and is a Massachusetts contract, and therefore is governed by the laws of that state, and the decision of *Claflin* v. *United States Credit System Co.*, *supra*, must control this case. *American Print Works* v. *Lawrence,* 3 *Zab.* 590.

The opinion of the court was delivered by

VAN SYCKEL, J.   The declaration in this case sets out a contract by which the plaintiff was appointed the defendant's agent for the State of Massachusetts, for the period of five years from December 1st, 1892, and alleges that on the 23d day of August, 1894, the defendant, without the fault of the plaintiff, ceased and refused further to employ him, and for this disregard of the contract damages are claimed.

As appears from the declaration, the contract contains the following provision :

" It is further agreed by the party of the second part [the plaintiff] that during the first three years of the existence of this contract he will, during each consecutive three months thereof, procure new business from parties who have never been guaranteed by this company prior to the procurement of said business, which said business shall be such as is accepted by said company, and shall be actually paid for, to an amount not less than one hundred and twenty-five thousand dollars ($125,000) for each of said three months, and in case of his failure so to do the said company shall have the right, which is hereby expressly reserved, to terminate this contract in its discretion."

The third and fourth pleas are intended to meet this clause in the contract.   They each allege that " during three consecutive months during the first three years of the existence of the said contract the plaintiff did not procure new business from parties who had never been guaranteed by the defendant prior to the procurement of said business, to the amount of one hundred and twenty-five thousand dollars," and that the defendant therefore terminated the said contract.   The third plea also names the three months during which the required amount of business was not procured, viz., May, June and July, 1894.

To each of these pleas, as well as to the fifth and sixth pleas, the plaintiff has filed a separate demurrer.

The allegation in the third plea, " that during three consecutive months during the first three years of the existence

of said contract, to wit, the months of May, June and July, in the year eighteen hundred and ninety-four, the said plaintiff did not procure new business," &c., if true, does not show a breach of the contract on the part of the plaintiff.

The plaintiff did not stipulate that there should be no three consecutive months during the first three years of the contract, during which the business procured by him should fall below the fixed standard.

The engagement is that the minimum amount of new business shall be procured in each consecutive three months during the first three years; that is equivalent to saying during each consecutive quarter, commencing December 1st, 1892.

The first quarter contemplated by the contract is December, January and February. The second, March, April and May, and the third, June, July and August, and not May, June and July as in the plea set forth.

The third plea is, therefore, faulty for failing to aver noncompliance with the terms of the contract.

The fourth plea is fatally defective for the like reason.

The fifth plea alleges in substance that the defendant company became insolvent, and ceased to employ plaintiff, because it was declared to be insolvent and enjoined from doing business by the Court of Chancery and put in the hands of a receiver, and that its charter was declared to be forfeited and void except for the purpose of the collection and distribution of its assets.

The contract alleged in the declaration to which this plea is interposed is, that the defendant company appointed the plaintiff its agent in and for the State of Massachusetts to procure applications for insurance, which appointment was to continue for the period of five years, and that the company agreed to pay the plaintiff, as compensation for his services as such agent, the sum of $5 for every $1,000 of guarantee issued by it upon application procured and presented by the plaintiff, and the renewals thereof on all regular business, and $7 per $1,000 of guarantee on inferior business, so long as he

shall remain the agent of said company, such sum to be paid only upon receipt by the company of all fees or premiums due for each certificate of guarantee, or renewal thereof, issued by it as aforesaid.

What the effect of insolvency and forfeiture of the company's charter will be upon a claim for damages for breach of a contract made with one who has no connection with the conduct of the business of the company need not be considered. The discussion in this case is limited to the effect of such insolvency and forfeiture upon a claim for damages for breach of a contract to continue the plaintiff in the service of the company after the time when the receiver was appointed.

It is well settled that contracts for personal services are made upon the implied agreement that both contracting parties will continue to live, and they are terminated by the death of either party. *Farrow* v. *Wilson, L. R.,* 4 *C. P.* 743. *Spalding* v. *Rosa,* 71 *N. Y.* 40, and cases cited.

The distinction between contracts for personal service and contracts with policyholders was applied in *People* v. *Globe Mutual Insurance Co.,* 64 *How. Pr.* 240, which was a case involving the question now presented, and where, as in this case, the life of the company was extinguished by the act of the state.

There the New York Supreme Court held that a general agent whose compensation depended upon his success in procuring insurance for the company upon which he was to receive a percentage, could not maintain an action for damages against the receiver, because before the expiration of the period for which he was engaged, he was prevented by the insolvency, receivership and dissolution of the company from continuing his employment.

This view was unanimously concurred in by the New York Court of Appeals. The views of the court are presented in a clear and forcible opinion by Mr. Justice Finch. *People* v. *Globe Mutual Insurance Co.,* 91 *N. Y.* 174.

The rule adopted in that case will be accepted here, and the demurrer to the fifth plea overruled.

The decree declaring insolvency and forfeiture of the charter and the appointment of a receiver operated alike upon the company and its agents, so that neither could perform and put the other in the wrong.

"There being no right to continue the service there can be no future earnings; and as the prohibition to continue the corporate business must prevent the obtainment of other policies of insurance, there cannot possibly be an allowance of damages based upon the possibilities of future earnings, which, it is plain, can never be made." 64 *How. Pr., supra.*

In the language of the contract declared upon, "the plaintiff, so long as he remained the agent of the company, was to be paid his stipulated percentage only upon receipt by the company of all fees or premiums due for each certificate of guarantee, or renewal thereof, issued by it."

After the receiver was appointed and the charter of the company declared to be void, it is manifest that the plaintiff could not obtain any business for the company upon which his right to a percentage would arise.

The sixth plea sets up a Massachusetts statute, providing that only certain classes of risks shall be the subject of insurance in that state, and that no foreign insurance company shall be allowed to do business in that state without license from the insurance commission. The plea further alleges that the defendant company was not authorized to transact its business in Massachusetts; that the plaintiff was not authorized to transact the business as agent, and that it was unlawful to engage in the business of indemnifying any person against excess losses from credit in said commonwealth, and that therefore the said alleged contract was void.

The objection to this plea for duplicity cannot be considered on general demurrer; it must be taken advantage of on motion to strike out.

To maintain this plea as a substantial defence to the action, the defendant cited and relied upon the case of *Claflin* v. *United States Credit System Co.*, 43 *N. E. Rep.* 293, but it is not necessary to criticise that case.

On demurrer the allegations of the plea must be taken to be true.

Assuming it to be true as alleged in this plea that the plaintiff was not authorized to transact the business which he engaged to do, and that it was unlawful to engage in such business, it is obvious that no action can be maintained for failure to employ the plaintiff to transact it. No one can be constrained to do an act against the law, nor can he be cast in damages for the refusal or neglect to do such act, or permit it to be done.

The demurrer to this plea must be overruled.

The demurrers being separate to each plea, costs will be allowed to the party prevailing in each case.