MARTIN ROSENBAUM, PLAINTIFF IN ERROR, v. UNITED STATES CREDIT SYSTEM COMPANY, DEFENDANT IN ERROR.

Argued June 28, 1900—Decided January 25, 1901.

1. A covenant not to engage in a particular business will not invalidate the contract of which it is a part, if such contract has otherwise a legal consideration. The case of *Fishell* v. *Gray*, 31 *Vroom* 5, approved.

2. A New Jersey corporation, engaged in the business of indemnifying against losses on credits, contracted with the plaintiff to act as its agent in Massachusetts for a term of years, and forthwith the plaintiff entered upon his duty as such agent, the insurance commissioner of Massachusetts having decided that it was lawful for him to do so. During the prescribed term the corporation became insolvent, and, for that reason, the contract was broken. Subsequently, the Supreme Court of Massachusetts decided, as is alleged, that the business was unlawful in that state. *Held*, that such illegality is no defence to the plaintiff's suit for breach of the contract; it can effect only the extent of recovery.

On error to the Supreme Court, upon a judgment on verdict in a cause tried at the Essex Circuit.

For the plaintiff in error, *Cortlandt & R. Wayne Parker.*

For the defendant in error, *Howard W. Hayes.*

The opinion of the court was delivered by

COLLINS, J.  On December 1st, 1892, the defendant, a New Jersey corporation engaged in the business of indemnifying against losses on credits, made a written contract with the plaintiff appointing him its agent in and for the State of Massachusetts for the term of five years, for a percentage on the amount of business secured as his compensation. The plaintiff, on his part in said written contract, agreed to act as such agent for the term named and to procure business to an extent stated each quarter—failing which the defendant might, at its option, terminate the contract; and further agreed that should he cease to be the defendant's agent, he would not engage in like business for three years thereafter. On September 4th, 1894, the defendant was adjudged insolvent and a receiver was appointed for its creditors and stockholders. On October 2d, 1894, its charter was forfeited, except for the purpose of collecting and distributing its assets. The plaintiff presented to the receiver a claim for damages for breach of said contract. The claim being disputed, the Chancellor authorized an issue or issues at law to determine its validity. The Supreme Court overruled a demurrer by the

plaintiff to a plea of such insolvency and forfeiture, but on writ of error it was adjudged, by this court, that there was a breach of the contract, and that the forfeiture of the defendant's charter would not bar recovery of damages for such breach. *Rosenbaum* v. *United States Credit System Co.,* 32 *Vroom* 543, *reversing* 31 *Id.* 294.

The Supreme Court had also decided to overrule the plaintiff's demurrer to a plea that the business of the defendant was unlawful in Massachusetts; but after the announcement of the decision that plea was withdrawn, as were also certain other pleas held to be faulty, so that the judgment reviewed went only on the plea of insolvency and forfeiture. After the reversal the pleadings were recast and the cause proceeded to issue of fact. Trial was had in the Essex Circuit, resulting in a verdict for the plaintiff, which was set aside and a new trial ordered by the Supreme Court *in banc.* The report of the decision is in 35 *Vroom* 35. Legal questions only were discussed—first, whether the plaintiff's agreement not to engage in business like that of the defendant for three years after he should cease to be its agent invalidated the entire contract, and second, the effect of alleged unlawfulness in Massachusetts of such business, a plea of that purport having been renewed. The first question was decided in favor of the plaintiff on the authority of *Fishell* v. *Gray,* 31 *Vroom* 5. The second question was decided in favor of the defendant. Under the pleadings, as recited in the opinion read by Mr. Justice Van Syckel, the unlawfulness alleged was not disputed. The court's decision was merely that the plaintiff's ignorance of it gave him no right of action for breach of the contract, but that concealment from him by the defendant of its knowledge of it would entitle him to damages, in tort, under pleadings to be moulded accordingly. Before the new trial, now the subject of review, I judge that new replications and subsequent pleadings were filed. In the present record the first plea is *non est factum,* on which issue is joined. The second plea is that the contract is void because a part of the consideration for the defendant's agreement was an agreement, by the plaintiff, not to engage, for three years

after he should cease to be agent for the defendant, in any business like that of the defendant, which restriction is alleged to be unreasonable. The replication is that the restriction was reasonable, and on this issue is joined. The third plea sets out, *in extenso,* the statute of Massachusetts, hereinafter referred to, and avers that the business of the defendant, for which the plaintiff was agent, was, at the time of the contract, unlawful in that state. To this plea there are four replications. The first avers that, at the time of the contract, the plaintiff was a resident of Illinois, and ignorant of the laws of Massachusetts; the second avers to the same effect, and also that the defendant was cognizant of those laws, and had been refused a license to transact its business in Massachusetts, which matters it fraudulently concealed from the plaintiff; the third avers that the defendant knew and the plaintiff was ignorant of the laws of Massachusetts, and the fourth avers that defendant's business was not unlawful in that state. Issue is tendered on these several replications, by divers rejoinders concluding to the country, and accepted by formal *similiter.*

At the new trial the evidence at the former trial was used by consent. The plaintiff moved to mould the pleadings so as to present an issue of tort, but the learned trial judge refused to make order to that effect, and his ruling, being discretionary, is not reversible. Verdict in favor of the defendant was directed on the third plea, and the bill of exceptions of the plaintiff presents this direction, for our review, under the present writ of error brought on the consequent judgment against him.

On the first plea a case was made by the plaintiff that the defendant did not attempt to confute, and no support for the direction of a verdict is claimed under that plea.

The issue raised on the second plea was ignored by the trial judge, but the plea is now pressed, and must be considered. How far the ancient doctrine that contracts in general restraint of trade are void has been modified need not be discussed. The modern doctrine seems to be that the restraint may properly be made as extensive as the reasonable need of

protection. The subject may be profitably considered in the light of its excellent presentation by Mr. George Stuart Patterson, in his monograph on the "Law of Contracts in Restraint of Trade," published by the University of Pennsylvania in 1891, where many decisions are collected and analyzed, and of the intimation of the Chancellor in his opinion read on the decision of this court in the case of *Trenton Potteries Co.* v. *Oliphant,* 13 *Dick. Ch. Rep.* 507. The reasonableness of an agreed restraint is a court question, and should be deducible from facts and circumstances recited in the contract or averred in pleadings. *Mallan* v. *May,* 11 *Mees. & W.* 653. In the present case the parties have framed an issue under a general replication of reasonableness. It was testified at the trial that the defendant's business was conducted in nearly every state of the Union, and was capable of indefinite extension. If it be proper to so raise the question, this was evidence requiring consideration, but, even if not, I think that the case has an aspect that precludes a decision in favor of the defendant. The contract between the parties was based on sufficient reciprocal consideration apart from the plaintiff's restrictive agreement. Both parties must be presumed to have known the law as to contracts in restraint of trade, and therefore the restrictive covenant, if invalid, ought not to be held to avoid the valid covenants. Contracts in undue restraint of trade are loosely spoken of in the books as illegal contracts. It is more accurate to style them unenforceable contracts. It is not against the law to make such a contract, or illegal to perform it. As was said by Chief Baron Pollock, in *Green* v. *Price,* 13 *Id.* 694: "It is not like a contract to do an illegal act; it is merely a covenant which the law will not enforce, but the party may perform it if he choose." In the case cited there was a covenant to pay £1,500 liquidated damages if the vendor of a London business should engage in like business in the cities of London and Westminster, or within six hundred miles from them, respectively. The restriction as to the cities was held good, and the stipulated damages were awarded the plaintiff, although the other restriction was held void as unreasonable.

On affirmance in the Exchequer Chamber in *Price* v. *Green*, 16 *Id.* 346, Mr. Justice Patteson said: "The restriction as to six hundred miles from London and Westminster is only void, not illegal, and therefore the rest of the restriction formed a sufficient consideration for the agreement to pay £1,500." The same distinction underlies this court's decision in *Trenton Potteries Co.* v. *Oliphant, ubi supra,* where a covenant by vendors not to engage in a like business to that sold in any state or territory except Nevada and Arizona, was held disjunctive and separable as to place. Being good as to New Jersey, where the vendors had their factory, this court compelled, by injunction, its performance here, and refused to inquire into the validity of the restraint elsewhere. It is evident that if the invalidity in any part of the covenant would avoid it utterly, the court would have been obliged to pass on that question.

The case in hand stands thus: The defendant, desiring the service of the plaintiff as its agent, agreed, in consideration of his covenant to serve it for five years, to employ him for that period, exacting from him also a covenant not to engage in like business for three years after his service should end. It was not wrong or illegal for the plaintiff to perform this covenant. If he could not be compelled to perform it, the defendant must be presumed to have known that this was so, and to have taken the chance that he would act honorably. To deprive the plaintiff of his contract of employment because of the possibility that he might repudiate his collateral engagement would be neither sound law nor good morals. In *Fishell* v. *Gray, ubi supra,* the Supreme Court held that the receiver of the present defendant must perform its agreement to purchase a business, although the contract contained an agreement that the vendor would not engage in a like business. We approve that decision and the reasoning of Beasley, Chief Justice, on which it is based  In most of the cases in which it has been held that if a promise forming part of the consideration of a contract is illegal, the whole consideration is void, it will be found that to do the thing promised was illegal or immoral. A failure to perceive the

distinction between such cases and those where the promise is merely void has led text-writers and some judges to include contracts in undue restraint of trade as within the doctrine stated, but as pointed out in *Fishell v. Gray, ubi supra,* this view is untenable. The only case directly asserting it to which we have been referred by counsel for the defendant is *Saratoga Bank* v. *King,* 44 *N. Y.* 87, the reasoning of which, in the light of what has been said, is its own refutation. The direction of verdict for defendant cannot stand on the second plea.

Nor do I think such direction can stand on the case made under the third plea, which alone moved the learned trial judge to give it.

The covenant of the defendant was not broken because of any supposed unlawfulness of the business contracted for, but because of the defendant's insolvency. Nor was it proved that the business was in fact unlawful. Of course it was not immoral, or, in the broad sense, illegal, but it is claimed that in Massachusetts it was prohibited by the statute pleaded. That statute defines a contract of insurance as "an agreement by which one party, for a consideration, promises to pay money or its equivalent, or to do some act of value to the assured upon the destruction of something of which the other party has an interest," and provides that it shall be unlawful for any company to make, or any agent to solicit "any contract of insurance upon or concerning any property or interest, or lives in this commonwealth, or with any resident thereof * * * unless and except as authorized" under the provisions of the act, which then proceeds to authorize the formation of insurance companies for various purposes named. Foreign companies and their agents are put on the same footing as domestic companies and their agents, upon compliance with certain requirements; certificates of authority to transact business being then issuable by the insurance commissioner. The proof at the trial was that before the defendant began its operations in Massachusetts, the insurance commissioner had ruled that its business was not insurance within the definition of the statute, and that no certificate of authority to transact

it was necessary; and that the plaintiff entered upon his agency as soon as appointed, and without interference on the part of the Massachusetts authorities, transacted a business of large volume for the defendant, down to the time of its becoming insolvent. I think, therefore, that the plaintiff was entitled to have a jury say whether, if the defendant had not become insolvent and ceased to do business, he would not have been permitted to continue in his agency, and, on that ground, award him damages. , Suppose the term of the contract had expired and the suit brought was for the agreed compensation. Surely an unlawfulness merely theoretical would afford no defence to the action. I see no reason why it should do so when the breach of contract arises only from insolvency.

For all practical purposes the defendant's business was lawful in Massachusetts. Nor can I see that it was theoretically unlawful. One of the purposes for which the formation of insurance companies is authorized by the statute pleaded is "to guarantee the fidelity of persons in positions of trust, private or public, and to act as surety on official bonds, and for the performance of other obligations." It seems to me that the acting as surety for the performance of obligations is exactly the defendant's business which is therefore within both the definition and the permission of the statute. If this view be correct, certificates of authority for the company and its agent to transact it were necessary. Those it behooved the defendant to procure, and it cannot set up its failure to do so as an excuse for the breach of its contract with the plaintiff. But we are referred to the reported case of *Claflin* v. *United States Credit System Co*, *165 Mass.* 501, decided April 1st, 1896, in which, it is alleged, the Supreme Court of Massachusetts has interpreted the statute in question, and has held that the business of defendant is in that state unlawful. If this be so, the plaintiff's suit is not thereby defeated. No doubt, after such a decision, the business could no longer be transacted in Massachusetts, and the plaintiff's profits would cease, but the only effect in the present suit would be on the extent of his recovery.

It is not needful to go farther for the purposes of this

writ of error, but it should be pointed out that the decision cited is not authoritative beyond the point that the business of the defendant was insurance within the definition of the Massachusetts statute. In its application of that adjudication to the case then in hand, the opinion read for the court is ambiguous. The suit was brought upon one of the defendant's contracts of indemnity, and recovery was contested on grounds not stated in the report of the case. The court *ex mero motu* avoided the contract, saying: "The contract sued on seems to be made unlawful by the provisions of *Stat.* 1887, *ch.* 214, § 3, both for the reason that the defendant had not been admitted to transact insurance here and because insurance of credits or accounts is not authorized by the statute." One of these reasons might be good, but *both* could not be. If credit insurance was unlawful, the defendant could not have been admitted to transact it. If the fact that defendant was not so admitted influenced the decision, the other reason assigned for it was mere *dictum.*

Of course, a plain decision of the Supreme Court of a state, interpreting one of its statutes, should, after its rendition, control judicial interpretation elsewhere, but I think the decision cited leaves the matter in hand still unsettled. The question involved was not argued, and no reference is made in the opinion to the authority to form an insurance company to act as surety for the performance of obligations. It is possible that that provision of the statute, blended as it is with another subject, was overlooked.

If, before the retrial of this action, an authoritative judgment of the Supreme Court of Massachusetts that credit insurance is in that state unlawful shall be pronounced, its effect on the plaintiff's recovery must then be considered.

I shall vote to reverse the present judgment, and award a *venire de novo.*

MAGIE, CHANCELLOR (dissenting). I am constrained to dissent from the opinion of the majority of the court in this case.

The ground of my dissent is this: Rosenbaum, by this action,

seeks to liquidate and fix the damages which the defendant company (an insolvent corporation) should be charged with, for the non-performance of a contract made by it with him. The contract contemplated the procurement by Rosenbaum of contracts in the state of Massachusetts for the insurance by the company of accounts and credits. Such contracts have been judicially declared by the courts of that state to be unauthorized and unenforceable. In my judgment, it is immaterial whether the lack of authority to make such contracts was properly predicated upon the omission of a legislative grant or not. For it was distinctly decided that if such authority has been given, its exercise in that state was unlawful, unless the contracting company had been admitted to transact such business within that state in the manner required by its laws. *Claflin* v. *United States Credit System Co.,* 165 *Mass.* 501.

As it appears that the defendant company was not thus admitted to transact business in that state, its contracts were properly held to be unlawful. Damages for being prevented by the insolvency of the company from procuring contracts, which the company had no lawful authority to make, cannot, in my judgment, be recoverable.

It is proper to add that the question before us was not involved in the previous decisions reported in 31 *Vroom* 294, or 32 *Id.* 543.

I therefore vote to affirm the judgment.

*For affirmance*—THE CHANCELLOR, VAN SYCKEL, HENDRICKSON. 3

*For reversal*—DIXON, GARRISON, GUMMERE, COLLINS, FORT, BOGERT, ADAMS, VREDENBURGH, VOORHEES. 9.