THE HOBOKEN PRINTING AND PUBLISHING COMPANY, PLAINTIFF IN ERROR, v. GUSTAV KAHN, DEFENDANT IN ERROR.

1. When a corporation is engaged in publishing a newspaper, and from the evidence it may be inferred that a libellous article published therein has been edited and published by some person employed for that purpose, the corporation will be liable to the person libelled to the same extent that an individual would be who had personally made such a publication.

2. Where the libellous article contained charges of dishonest, fraudulent and criminal conduct, and, upon a retraction being demanded, a second article was published which might be construed as containing a covert and evasive reiteration of the original charges, it was not error to refuse to charge that no punitive damages *could* be awarded.

On error to the Supreme Court.

For the plaintiff in error, *William S. Stuhr.*

For the defendant in error, *Gilbert Collins.*

The opinion of the court was delivered by

MAGIE, J.  The writ of error in this case brings here the record of a judgment obtained by Kahn, the defendant in error, against the Hoboken Printing and Publishing Company, the plaintiff in error, in an action for libel.

A previous judgment in Kahn's favor was reversed in this court on account of the exclusion of evidence which a majority of the judges thought should have been admitted.  *Hoboken Printing Co.* v. *Kahn,* 29 Vroom 359.

A *venire de novo* having issued, Kahn obtained another verdict against the company, on which the judgment now before us was entered.

The assignments of error are directed to the conduct of the trial, and the first error alleged is that the trial judge refused to nonsuit Kahn at the close of his case.

The bill of exceptions shows that the motion to nonsuit was

put on two grounds—*first*, that no damages had been proven; and *second*, that it had not been shown that anybody had seen the printed articles which Kahn had put in evidence beside himself.

The first article put in evidence was that on which the declaration was founded, which reads as follows:

### "GONE WITH THE BOODLE.

"Gustav Kahn, who was employed as ticket taker at one of the entrances at the Eldorado, is among the missing. So is about two hundred dollars ($200) of the gate receipts which were taken in Monday night. Detective Woods is looking for the festive Kahn, but up to date he can't be found. Kahn is said to be sequestering himself over on Long Island. Surely the Eldorado is having trouble upon trouble."

The second article put in evidence reads as follows:

### "MR. KAHN DENIES

*"A Story of which Detective Woods is the Author.*

"Gus Kahn is the assistant manager at the Eldorado, and says he is not and never has been ticket taker. A statement was published on Wednesday to the effect that on Monday night about two hundred dollars ($200) of the gate receipts at the Eldorado was missing, and that Detective Woods was looking for Mr. Kahn, who, it is alleged, had gone to Long Island. Mr. Kahn called to-day at 'The Observer' office, and said there was absolutely no truth whatever in the story. He added that no money was missing, and that he has been at no time ticket taker.

"The information in the matter was given to a reporter by Detective Woods.

"Detective John Woods, when seen to-day by an 'Observer' reporter, said that he and Detective Clifford had heard from numerous persons the report that Kahn had skipped with the receipts. Detective Woods said also that he and Detective Clifford had made an investigation, and a considerable number of the employes informed them that they also had heard

the story about Kahn's sudden disappearance, and that money had gone with him. An officer of the park is willing to swear that he found the office, which Kahn had charge of, open after the park closed. It was common rumor that Kahn had gone off with the ' boodle.' An usher said, in the presence of an 'Observer' reporter and the two detectives, that he could not expect to get his pay now, as Kahn had gone off with the cash."

As the first article plainly imputed to Kahn conduct which was dishonest, fraudulent and even criminal, evidence of any special damage was wholly unnecessary. Unless shown to be true and to have been published for the ends and motives described in our constitutional provision on the subject, the publication of the article clearly entitled Kahn to recover damages. There was, therefore, no reason to nonsuit on the ground first alleged.

In respect to the second ground relied on for a nonsuit, the bill of exceptions shows that it was afterward disclosed by the evidence that " The Observer," in which the articles in question had been published, was a newspaper printed and circulating in the city of Hoboken, from which the jury might well infer that they were seen by others who read that newspaper. Where the ground for nonsuit is a defect in evidence which is afterward supplied, it is well settled that no reversal should follow.

The second assignment of errors is based upon an exception to a portion of the charge of the trial judge, covering a page and a half of the printed case and containing three distinct and disconnected propositions. This exception is so general that it is doubtful whether a reviewing court ought to consider the single point on which it is now argued that there was error. But that point is raised under the next assignment of errors.

The third assignment of errors is based on an exception taken to the refusal of the trial judge to charge, as requested, that the jury could not give punitive but only compensatory damages.

That damages such as are called punitive or vindictive or exemplary may be awarded in actions of libel is a doctrine established by a long line of decisions. Mr. Addison says that wherever injury has been done to the fair fame, reputation or character of the plaintiff, juries are generally invited to give, and are justified in giving, such a sum as marks their sense of the maliciousness or recklessness of the wrongdoer in offering the insult and injury, their belief in the groundlessness of the charge and their desire to vindicate the character of the plaintiff. *Add. Torts* 993.

I do not understand that the counsel for the company in this case challenges this doctrine. His contention rather is that there is nothing in the evidence to justify the award of exemplary damages.

Nor does he deny the liability of a corporation to an action for libel (which was settled by this court in *Evening Journal* v. *McDermott*, 15 *Vroom* 430); nor that a corporation engaged in the business of publishing a newspaper will be responsible for damages done to reputation by articles published therein by agents employed for that purpose.

But the claim is that exemplary damages may not be awarded in such a case unless the corporation approves and adopts the act of its agents in making such publication, and in support of this claim reliance is put upon the doctrine laid down by the Supreme Court in *Haines* v. *Schultz*, 21 *Vroom.* 481.

It appeared in that case that the proprietor of a newspaper in which a libellous article was published was ignorant of its publication until after it had appeared. It was held that he would not be liable to punitive damages for a publication made without his knowledge or consent except upon proof of his subsequent approval of such publication.

But it is unnecessary to determine whether the doctrine of that case is sound. A corporation engaged in publishing a newspaper obviously must act by selected agents. Its directors or managers cannot formally pass on each publication or determine what is to be admitted therein. Such determination

is necessarily committed to its agents. In making such determination they are acting within the scope of their employment. The intent with which they publish must be imputed to the corporation which employs them to make the publication of the newspaper. If the intent is malicious, the corporation must be liable therefor as it is for other tortious acts of its agents done within the scope of their authority and for the purposes for which the corporation was created and the agents were employed. *Gillett* v. *Missouri Valley Railroad Co.*, 55 *Mo.* 315; *Samuels* v. *Evening Mail Association*, 75 *N. Y.* 604, approving the dissenting opinion of Mr. Justice Davis in *S. C.*, 9 *Hun* 288; *Johnson* v. *St. Louis Despatch Co.*, 2 *Mo. App.* 565.; *Hewitt* v. *Pioneer Press Co.*, 23 *Minn.* 178.

Now, the proof disclosed by the bill of exceptions was that the article upon which the action was brought was written by a reporter, and that it appeared in the paper with the headline " Gone with the boodle; " that Kahn, the day following its publication, demanded of the managing or city editor a retraction of the charge against him, and that the second article thereafter appeared.

From this there was a plainly justifiable inference, to wit, that the article sued upon was received, edited and published by some agent of the company entrusted with that duty, and that the second article emanated from and was published by someone having that power conferred upon him by the company. Upon that inference being drawn, the liability of the company is precisely the same as that which an individual would incur by publishing such articles.

Looking, then, at the first article, which charges Kahn with fraudulent and criminal conduct, a charge which the company did not pretend to justify, I think it obvious, not only that its language indicated what the law calls malice—*i. e.*, absence of lawful excuse (*Odg. Lib. & S.*\*265)—but that its publication in a public newspaper indicated such a wanton and reckless disregard of Kahn's right to an unchallenged reputation that the jury might have been instructed to consider whether an in-

crease of damages beyond those which would merely compensate him, and which would be sufficient to rebuke the malicious and reckless wrongdoer and vindicate Kahn's character, ought not to be awarded.

But clearly such an instruction was proper, when the second article is considered. This was admissible in evidence under the doctrine laid down by this court in *Evening Journal* v. *McDermott, ubi supra.* That it might be construed as a covert and evasive reiteration of the original charge is plain. If so, there was evidence in it of express malice and ill-will, which justified a refusal to instruct the jury that no damages of a punitive or exemplary character could be allowed.

The result is that the judgment must be affirmed.

DIXON, J. (dissenting). By its course at the trial the defendant corporation seems to me to have admitted its legal responsibility for the libels, but to have denied its responsibility for punitive damages. Such a position is a perfectly rational one, for the doctrine of *respondeat superior* might make the corporation answerable for compensatory damages, and not for vindictive damages. The position was also permissible on the proofs, for they utterly failed to show against the defendant any ground of liability whatever, and if the corporation chose to admit by its silence such obligation as the maxim above mentioned would impose, it was certainly, nevertheless, at liberty to demand that appropriate evidence should be produced before any greater charge was fastened upon it. Without such evidence, and in the face of the defendant's protest, it was erroneous to permit the jury to award exemplary damages, and for such error the judgment should be reversed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, GARRISON, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, NIXON. 11.

*For reversal*—DIXON, GUMMERE, LUDLOW. 3.