HELEN GRAY FERGUSON, PLAINTIFF IN ERROR, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY ET AL., DEFENDANTS IN ERROR.

Argued November 22, 1904—Decided March 20, 1905.

Action by Helen Gray Ferguson against the Central Railroad Company of New Jersey and the Philadelphia and Reading Railway Company. Judgment of nonsuit against plaintiff, who brings error, reversed. It was *held*, (1) that the facts bearing on the cause of the accident, as presented by the plaintiff at the trial below, were sufficient to require their submission by the court to the jury; (2) if different minds might honestly draw from the testimony (from which the negligence of the defendant could reasonably be inferred) different conclusions as to the cause of the accident, the settled legal rule is that such material question, remaining in substantial dispute, belongs to the province of the jury; (3) in the trial of actions arising *ex delicto*, the *lex fori* is controlling upon the question of the quantum of evidence requisite to place the cause within the province of the jury; such question concerns the order of judicial proceedings where the action is instituted.

On error to the Supreme Court.

On May 8th, 1900, Charles Ferguson, a locomotive fireman, while engaged in the performance of his duties upon the engine of the Central Railroad Company of New Jersey (running upon the roadbed of the Philadelphia and Reading Railway Company), was, by its sudden derailment, thrown underneath it and killed. The accident occurred on the latter company's railway, at a street crossing near its Jenkintown station, in the State of Pennsylvania, and the widow of the deceased has brought her action here in its present form, under the authority of the statutes of that state, to recover damages from the defendants for the death of her husband, on the ground of their neglience. The particular negligence charged in the plaintiff's declaration and defined in the evidence relates to the obstruction of the railway tracks and the roadbed by drifted stones, gravel, sand

and dirt, which the plaintiff claims were negligently permitted by the defendants to be there, so as to cause the derailment. It was also insisted by the plaintiff that the signal displayed in the sight of the engineer and fireman at the crossing was a notification to the effect that the track was clear there and misled them, and was, under the circumstances, shown a negligent act of the defendants. The plaintiff's evidence tended to establish the following circumstances, viz.: The locomotive attached to a fast express train of five cars, called the "Royal Blue Line" (made up in the west), was running from Philadelphia to Jersey City a little after three o'clock in the afternoon of the day named, at the rate of about thirty miles an hour at the time of the accident; the engineer testified that he saw the signals notifying him that the crossing was clear on the bridge on the east end of the station platform, "twenty-five or thirty feet in the air," and that both he and Ferguson (the fireman) saw them "a half-minute before he struck the crossing," and that he "had time to sit down on the seat and pull the engine open;" that it was then very cloudy and dark, and raining hard; that he had no trouble in seeing the signals as soon as he "could get near enough to them to see through the rain." He thus relates what immediately followed, viz.: "I saw the signal, and we pulled out and went over the crossing, and the next thing the engine apparently went up in the air; * * * she apparently raised right up in front—drivers and everything raised up * * * high enough to throw me off the seat; * * * the engine jumped the track and went off into the platform—struck the depot and turned over; * * * it went over something—some kind of obstruction, I went over; * * * I have reason to believe that obstruction was on the crossing; * * * that is about where I felt her go up, I thought, about on the crossing; * * * she went from the crossing, about midway from the crossing, I think—the centre; she dragged right across on the ties; she left the track about the middle [of the crossing], I think; * * * she turned over; went off on the right side of the track; turned completely around, towards Philadelphia;

*   *   *   I stayed from the time of the wreck until about six o'clock; I saw dirt and sand taken off the crossing; piled up each end of it—I should think pretty near a wagon load on each side; *   *   *   I was delayed there maybe half an hour while they were shoveling the dirt off; *   *   *   the dirt and gravel seemed to be wet."

Another witness who had gone to the derailed engine immediately after the accident saw the fireman dead underneath it, and thus describes the condition of the crossing, viz.: "It was covered with water, partially, and on the crossing there was a lot of 'wash'—stones, from the size of a hen's egg to the consistency of granulated sugar—all that stuff that comes together by the rain; it was all washed on the track; I suppose there were three or four cartloads; *   *   *   I saw this 'wash'—these stones from the size of hens' eggs down to the size of fine sand—upon the track; that is what took my attention more than anything, was the 'wash' and where the train passed on the crossing; *   *   *   it was not all spread out so much; it was washed up in a kind of cone, right in the 'left-hand track,' I call it—I call the two inside tracks, where there is a double track, the 'left-hand track'—and on the left-hand track was the largest accumulation of this stuff; on the outside track—the 'right-hand track'—there was not so much of it; it was all washed in on this left-hand track; that is where it accumulated the most."

The derailed engine weighed about ninety-two or ninety-three tons; was moving on the left-land (westerly) track when wrecked, and was thrown over upon the right-hand (easterly) track in the direction in which the obstruction upon the westerly track would naturally force it to fall. A local train, moving upon the same track, about three minutes before the accident had safely passed the crossing.

The plaintiff also offered evidence tending to prove that the crossing was situated in a natural depression of the ground and at a lower level than the surrounding lands; and that during very severe rainstorms the surface water ran down there and carried with it, and deposited upon the railroad tracks, large quantities of sand, stones and dirt; that the

drainage system, as there constructed by the railroad company, was inadequate for the proper discharge of such surface water from this crossing; that the culvert, placed under the roadbed at the crossing by the company for the purpose of venting the surface water, was too small in size and capacity to accomplish such purpose; and that in consequence the water accumulated there after extremely heavy rains and deposited dirt and other solid materials upon the railroad tracks.

This action was brought in this state under the statutes of the State of Pennsylvania by the plaintiff, suing as the widow of the deceased fireman and not in a representative capacity; but no objection has been raised in this regard.

The trial justice, upon the motion to nonsuit, expressed himself, *inter alia*, as follows, viz.: "If there had been proof in the case that the stones were so packed about the track that it was likely or probable that they did or could derail the engine, I should have been inclined to take a different view of the situation."

For the plaintiff in error, *John H. Backes* and *Clarence H. Murphy*.

For the defendants in error, *Thompson & Cole* and *George Holmes*.

The opinion of the court was delivered by

VREDENBURGH, J. (after stating the facts). The foregoing evidence sufficed to lay a foundation from which the jury could legitimately infer that the cause of the sudden uplifting and overthrow of the engine was the deposit upon the railway track of the sand, stones and materials washed down by the rainstorm, so as to become suddenly impacted or wedged in front of the fast-moving locomotive and so obstructed its passage as to raise it up from its tracks and derail it in the manner described in the plaintiff's evidence.

In taking this case from the jury the court erred. Upon the correct ascertainment and determination of the cause of the derailment depended the further questions at issue, bearing

upon the performance by the defendants of their legal duties of proper inspection and care to discover and remove from their tracks obstructions likely to derail a locomotive moving thereon, as well as upon their liability, if any existed, for the non-performance of duties relating to the drainage of surface water at the place of the accident.

If different minds might honestly draw from the testimony (from which the negligence of the defendant could reasonably be inferred) different conclusions as to the cause of the accident, the settled legal rule is that such material question, remaining in substantial dispute, belongs to the province of the jury. *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605; *Traction Company* v. *Scott,* 29 *Id.* 682; *Smith* v. *Erie Railroad Co.,* 38 *Id.* 636; *Adams* v. *Camden and Suburban Railroad Co.,* 40 *Id.* 424.

Upon the matter just considered, relating to the quantum of evidence required to place the case within the province of the jury, the law of the forum is controlling. It is a part of the order of judicial proceedings where the action is pending. The law of the place where the right was acquired, or the liability was incurred, will not govern the decision of such question. The general rule of the common law, sustained by numerous authorities, is thus stated by Story (*Story Confl. L.* (*8th ed.*) 775), viz.: "That in regard to the merits and rights involved in actions, the law of the place where they originated is to govern; but the form of remedies, and the order of judicial proceedings are to be according to the law of the place where the action is instituted, without any regard to the domicile of the parties, the origin of the right, or the country of the act." To this effect, also, see *Northern Pacific Railroad Co.* v. *Babcock,* 154 *U. S.* 961, approving *Herrick* v. *Minnesota and St. Louis Railroad Co.,* 31 *Minn.* 11, and cases there cited; and this has long been the settled doctrine of the courts of this state in actions upon contract. *Gulick* v. *Loder,* 1 *Gr.* 68; *Wood* v. *Malin,* 5 *Halst.* 208: *Garr* v. *Stokes,* 1 *Harr.* 403, 405; *Harker* v. *Brink,* 4 *Zab.* 334; *Armour* v. *McMichael,* 7 *Vroom* 92, 94. The same principle applies to actions of tort. See cases cited.

652     COURT OF ERRORS AND APPEALS.

Norman v. Middlesex and Somerset Trac. Co.     71 N. J. L.

The judgment below should be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, GARRETSON, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN.    10.