Commonwealth Title, &c., Co. *v.* N. J. Lime Co.    *86 N. J. Eq.*

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—14.

*For reversal*—None.

COMMONWEALTH TITLE INSURANCE AND TRUST COMPANY, complainant-respondent,

*v.*

NEW JERSEY LIME COMPANY et al., defendants-appellants.

[Argued June 26th, 1916.    Decided November 20th, 1916.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson, who filed the following opinion:

The bill is filed to foreclose two mortgages, the first to secure thirty-three outstanding bonds of the mortgagor, the defendant the New Jersey Lime Company, in the sum of $500 each, and the second to secure sixty-seven bonds of the mortgagor, the same defendant, in the sum of $500 each. All of these bonds are owned by the defendant the Bethlehem Steel Company, and the bill alleges that as such owner the said company requested the complainant to foreclose the second mortgage to secure the sixty-seven bonds by reason of default in the payment of interest. No objection has been made to the alignment of the Bethlehem Steel Company, the complainant's sole beneficiary as a defendant instead of a co-complainant, and in this case the matter seems to be merely technical. There is no difficulty in dealing with these motions in the same manner as if the mortgagee trustee and its sole beneficiary had been joined as complainants. The motion to strike out the portions of the answer

is made on behalf of the complainant, the Commonwealth Title Insurance and Trust Company, trustee, mortgagee, and the motion to strike out or dismiss the answer by way of cross-bill is made on behalf of the complainant, and also on behalf of the Bethlehem Steel Company, which is a defendant to the cross-bill.

1. The question which has been the subject of extensive argument, and around which this whole case turns, may, I think, be briefly stated with substantial accuracy as follows:

Can a party desiring and intending to overwhelm the owner of mortgaged property with financial embarrassments in order that he may acquire the property at a foreclosure sale, first, enter into a contract with the mortgagor with intent to break it; second, break this contract and thereby cause great money damage to the mortgagor, then buy up the outstanding mortgage which the mortgagor has been unable to maintain, and last of all, foreclose the mortgage and thereby force the mortgaged property to a judicial sale under conditions of market which favor the purchase of the property by the complainant, the holder of the mortgage, for a price below its value?

2. The defendant the New Jersey Lime Company files an answer and answer by way of cross-bill. The prayer of the answer is in the usual form that the "defendant be hence dismissed with its reasonable costs and charges," with an additional prayer for further and other relief.

The prayer of the cross-bill is, that the complainant and the defendant the Bethlehem Steel Company, its sole beneficiary, be restrained from prosecuting any suit or proceeding in law or in equity to enforce the payment of the above-mentioned bonds, or any of them, or to foreclose the mortgages given to secure the same for the period of two years after the date of the decree to be entered in this suit, or such other length of time thereafter as the court may deem just.

The cross-bill further prays that the Bethlehem Steel Company and its agents, &c., be enjoined from acts which would injure the credit and financial standing of the defendant, and from purchasing any additional bonds or obligations of the defendant the lime company, and from doing any act or making

any statement that might tend to prevent the lime company from bringing about a financial reorganization and commencing to do business again.

The cross-bill further prays that the damages of the defendant caused by the wrongful acts of the Bethlehem Steel Company be assessed, and that the defendant the Bethlehem Steel Company be directed to pay the same to the defendant the lime company.

The cross-bill alleges that the defendant the lime company had been damaged by the wrongful acts of the defendant the Bethlehem Steel Company in the sum of $75,000.

3. That the cross-bill is demurrable, so far as it asks for a decree for damages, seems to be clear. The damages are unliquidated, and therefore are not the proper subject-matter of a set-off in a foreclosure suit under our existing laws. The answer, however, does not set up these damages by way of a set-off, but denies the right of the complainant to foreclose the mortgages, and prays for a dismissal of the bill. The damages are not pleaded as a set-off or abatement of the mortgage debt, and if such were the case such set-off or abatement could not be allowed.

4. The prayer of the cross-bill for an injunction restraining the steel company and its agents from injuring the financial standing of the lime company, and from purchasing additional obligations of the lime company, &c., above set forth, may be dismissed, I think, without any special and separate consideration. There is nothing set forth in the cross-bill which would warrant such an extraordinary use of the injunctive power of a court of equity.

5. The prayer of the cross-bill for a stay of all proceedings for the collection of these bonds at law or in equity for the arbitrary period of two years, is without support in any equitable principles of which I am aware. No reason is suggested why a stay for two years, no more or no less, should be allowed. If any stay should be granted, the duration of such stay should be measured in some way by the financial exigencies of the complainant which the defendant the Bethlehem Steel Company may be adjudged to have caused. The apprehension of this view, no doubt, induced the pleader, after asking for a stay for the arbitrary period of two years, to add in the alternative a prayer

for a stay for "such other length of time" as the court might deem just.

If the court should adopt the theory of this cross-bill, it would have to enter upon an almost impossible task. The court would be obliged to learn all the facts and circumstances relating to the financial condition of the defendant the lime company, determine the relative importance of the various factors which entered into the financial failure of the lime company to continue the prosecution of its business, and then hold off the complainant and the defendant the Bethlehem Steel Company from the collection of this mortgaged indebtedness for a period in some way to be measured which would enable the defendant the lime company to recover from the injuries which resulted from the wrongful conduct of the defendant the steel company.

In large numbers of instances of financial failure in business like this, recovery cannot be effected by the debtor, however long the period may be during which the particular wrong-doing creditor may be stayed in the collection of his debt. There is absolutely nothing to show in this case that a stay of ten years would meet the alleged equities of the case of the unfortunate defendant the lime company. It may be observed, also, that the defendant the lime company, by its cross-bill, seeks to recover $75,000 of damages, and such recovery is denied in this case because in respect of these alleged unliquidated damages, the remedy of the defendant the lime company is at law. Are the complainant and the Bethlehem Steel Company to be stayed for a period of time in the collection of these debts because of the wrongful conduct of the steel company in preventing the defendant the lime company from paying them, or carrying them in some way, while this same defendant the lime company may, by an action at law, recover from the steel company all the damages which it has suffered according to the rules of law which define the measure of damages recoverable in such cases?

If a court of equity or a court of ethics had jurisdiction to enjoin the collection of these honest debts, against which there is no suggestion of a defence in the hands of the original creditors, on the ground that the defendant the steel company, which is seeking to collect the debts, had before acquiring them been

guilty of malicious, malevolent or even illegal conduct, with the intent and effect of hindering or even preventing the debtor, the lime company, from paying these debts, it would seem that the lime company obtaining such injunctive relief should be subjected to an injunction restraining it from prosecuting its action or actions at law for the recovery of the $75,000 of damages. I have used the phrase "illegal" because it is charged that the defendant the steel company intentionally committed a breach of its legal contract with the lime company. It is not necessary to discuss the theoretical question in precisely what sense the breach of an ordinary legal contract is illegal. It may be borne in mind that some theoretical writers maintain that at common law all contracts contain the implied alternative that each party may either perform his contract or pay the damages. Notwithstanding some exceptional and anomalous instances, the general proposition stands that "the mere non-performance of a promise" does not constitute a tort. *Poll. Torts 339.*

With the steel company enjoined from foreclosing, and the lime company enjoined from suing at law for its damages, we have a situation of great difficulty for a court of equity which does not undertake to administer divine justice in granting, modifying and vacating injunctions.

6. If the defendant the steel company has committed a breach of an independent contract with the lime company, the remedy of the lime company is at law. If the defendant the steel company has committed any tort which has caused damages to the lime company, the remedy of the lime company likewise is at law, and legal rules defining the measure of damages in case of a breach of contract, or in case of a tort, fix the limits of the defendant's liability. The argument on behalf of the lime company would, in some instances, add a novel penalty or element of damage in cases of a breach of contract and in cases of tort, viz., the imposition upon the party who broke his contract, or committed the tort, of an incapacity to acquire and forthwith enforce outstanding overdue pecuniary obligations of the other party, against which there is no defence while they remain in the hands of their original holders. The doctrine contended for would in many cases also involve the infliction of a penalty upon

innocent third parties by depriving them of the natural and oftentimes the sole market in which they could realize the amount of the obligations which they hold. There is nothing in this case to suggest that the one hundred bonds of the lime company, which the steel company acquired after the steel company had done the things of which the lime company complains, were not in the hands of holders who were entirely innocent of all the alleged wrong-doing of the steel company. It is a familiar rule of equity that with a single exception, which we need not notice, the whole market is open to the *bona fide* holder for value, including parties who had notice.

7. The fact that no authority has been cited sustaining this cross-bill indicates that the novel equitable principles contended for as a foundation of the cross-bill cannot be a part of our juridical system.

The case of *Farmers' Loan and Trust Co.* v. *New York and Northern Railway Co., 150 N. Y. 410,* upon which the counsel for the lime company rely in their elaborate brief, and which they allege to be "on all fours with the present case," it seems to me very plainly does not in the slightest degree support the theory of the cross-bill. If the steel company had bought up a majority of the stock of the lime company, had placed a board of directors in control of the business of the lime company, and through such board had caused the diversion of the income and disarrangement of the business of the lime company, with the intent and with the effect of preventing the lime company from carrying this mortgage indebtedness so that it, the steel company, might buy up the mortgage indebtedness, and the steel company then had in fact bought up the indebtedness and forced on this foreclosure, the case cited might have been an authority in point. There is absolutely nothing to show in this case that all the contracts and other dealings between the lime company and the steel company before the latter acquired these bonds, were not regular business transactions not affected by any fiduciary relation, and without the slightest taint of fraud. The answer and cross-bill allege that the steel company made certain representations affecting the credit of the lime company, but there is no allegation that the steel company alleged anything

456    COURT OF ERRORS AND APPEALS.

Commonwealth Title, &c., Co. v. N. J. Lime Co.    · 86 N. J. Eq.

which was not strictly true. The steel company and the lime company dealt at arms-length.

8. A motion to strike out a cross-bill, as has often been pointed out, is the exact equivalent of a demurrer. *Bullock* v. *Bullock, 52 N. J. Eq. 561, 563; Hanneman* v. *Richter, 63 N. J. Eq. 753, 755; Holton* v. *Holton, 72 N. J. Eq. 312, 314; Stevenson* v. *Morgan, 63 N. J. Eq. 707, 805; Schutz* v. *Ziegler, 80 N. J. Eq. 199, 202.*

In the absence of any precedent supporting this cross-bill, and with the views which I entertain in regard to the novel principles upon which it is based, I feel constrained to sustain the demurrer. The extent to which a court of equity has any discretion to withhold its judgment upon the case presented by a bill when the sufficiency of the same is properly challenged by a demurrer, is quite limited. The discretionary power referred to certainly cannot be exercised in favor of the demurrant in this case. The motion to strike out the cross-bill, therefore, will be granted.

9. The motion to strike out the answer occupies a very different position from the motion to strike out or dismiss the answer by way of cross-bill. There is no demurrer in equity to an answer.

The motion to strike out an answer is equivalent to exceptions. *Doane & Jones Lumber Co.* v. *Essex Building and Land Co., 59 N. J. Eq. 142; Habermann* v. *Kaufer, 60 N. J. Eq. 271, 274, 275; Condict* v. *Erie Railroad Co., 77 N. J. Eq. 282, 284.*

In this instance, the motion stands before the court precisely as if under the old practice the complainant had filed exceptions to the portions of the answer to which it objects on the ground of impertinence.

Assuming in deciding that this cross-bill should be dismissed —that the demurrer to it should be sustained—that the law laid down necessarily condemns the portions of the answer objected to as inadequate, as setting up no defence, and no matter in aid of any defence, it does not therefore follow that the motion to strike out these portions of the answer must be granted. No doubt it may sometimes be hard to draw the line between an impertinent answer and a legally inadequate answer, but this

distinction must be made. In *Habermann* v. *Kaufer, supra,* Vice-Chancellor Grey undertook to formulate a practical definition by stating that to succeed in a motion to strike out matter from an answer it must be shown that "the matter criticised is so unrelated to the complainant's claim as to be unworthy of any consideration as a defence," and that if the part of the answer objected to "be found to be so connected with the subject-matter of the complainant's suit that it may fairly be deemed to present some question of either law or fact which the court ought to hear and determine, then it cannot be stricken out as impertinent, but must be considered, and its sufficiency must be passed upon as a defence either of fact or of law to the action." The fact that the court upon a motion to strike out a cross-bill made concurrently with the motion to strike out portions of the answer has based its decision to grant the motion upon principles which, if true, necessarily render the answer inadequate, makes no difference in the situation. A demurrer very often is sustained after an elaborate discussion and consideration of complex questions of law, but the moment it is conceded that an answer presents any matter of law which is in any degree open to argument and consideration, the answer cannot be excepted to or stricken out as impertinent.

Demurrers in equity should be discouraged as tending to unnecessary delay and as presenting often to the judgment of the court purely academic questions, the discussion and determination of which frequently embarrass rather than aid the administration of justice, the application of law to the facts of the case when those facts are actually proved at the final hearing. Among the proposed amendments to our chancery practice is one abolishing demurrers. In my opinion, demurrers to bills should never be allowed excepting by leave of the court.

The motion to strike out an answer, or a portion of an answer, which is appealable under our practice, is less worthy of favor than a demurrer to a bill. This motion is a proceeding often involving only expense and delay.

In this case I do not think that it can be said that the portions of the answer objected to do not present any question of law which the court ought to hear and determine. The fore-

going memorandum, which deals with the legal theory of the cross-bill, I think indicates that the allegations of the answer objected to are not impertinent and immaterial, but exhibit an arguable question.

But the judgment of the court, upon a demurrer that a cross-bill presents no cause of action in equity in a case like this, does not necessarily involve the proposition that the same matter set up by way of defence in an answer is ineffectual and inadequate. The conduct of the Bethlehem Steel Company in this case may not prevent a cause of action in equity on behalf of the New Jersey Lime Company, but that same conduct may bar the Bethlehem Steel Company from any relief against the New Jersey Lime Company. It must be borne in mind that we are treating the Bethlehem Steel Company as the actual complainant in this cause, the nominal complainant, the Commonwealth Title Insurance and Trust Company being its trustee and representative.

In order to present the matter under consideration in a convenient form, let us suppose that the defendant in a foreclosure suit sets up by way of answer that the complainant, with actual intent to ruin the defendant financially, and to acquire his valuable real estate, first burned the complainant's buildings in which he carried on a lucrative business, and thereby caused his insolvency, and then bought up outstanding mortgages covering the land, and immediately, or at a convenient period when times were hard, commenced foreclosure suits. The defendant in such case invokes the rather vague and somewhat criticised doctrine that equity will not afford relief to a complainant who comes into court with unclean hands. The question is not whether the answer presents a legal defence. Under the well-settled principles above stated, a demurrer to the answer will not be allowed. The sole question is whether an arguable question is presented to the court. This question in the present case has been the subject of extensive argument, and authorities have been cited which the court has been obliged to examine with some care. *Farmers' Loan and Trust Co.* v. *New York and Northern Railway Co.*, *supra; Ewart* v. *Irvin*, *1 Phil. Rep. 78; Davis* v. *Flagg, 35 N. J. Eq. 491; Dickeman* v. *Northern Trust Co.*, *176 U. S. 181; Morris* v. *Tuthill, 72 N. Y. 575; Comstock* v. *Johnson, 46 N. Y.*

*615; Wilson* v. *Bird, 28 N. J. Eq. 352; Thorne* v. *Mosher, 20 N. J. Eq. 257; United States* v. *Peck, 102 U. S. 64,* are a few of these authorities bearing upon various matters of law which were thrashed over in the argument.

In the foregoing consideration of the cross-bill, it was not decided, but assumed, that a case of a willful breach of a valid contract was presented, although that matter was the subject of large dispute. Of course, the same assumption must be made in dealing with this motion to strike out a portion of the answer, because no such motion could be granted as the result of an argument, which convinced the court, after careful consideration, that no meeting of minds had occurred, or that the alleged contract was void under the statute of frauds.

In dealing with the cases in which the complainant in a foreclosure suit had been defeated, where the mortgage had been made to become due under a forfeiture clause because the complainant himself had caused the forfeiture, it must be borne in mind that the right to foreclose the second mortgage in this case, securing sixty-seven bonds ($33,500), is based upon non-payment of interest and taxes. If the matter objected to in this answer presents a debatable question as to the complainant's right to foreclose the second mortgage, or as to the complainant's right to collect any portion of the indebtedness for which it seeks to sell the defendant's land, the matter objected to in the answer cannot be stricken out as impertinent, but must stand, although it may be inevitable that the complainant will be entitled to a decree for the sale of the mortgaged property.

Whatever views covering this case, or a part of it, have controlled me in deciding the demurrer to the cross-bill, although the elaborate argument of this case and its subsequent consideration on my part may have induced in my mind the firm conviction that this answer is inadequate, and does not present any defence to this foreclosure suit, I am satisfied that this motion to strike out the answer could not be granted without practically allowing a demurrer to an answer, and that the portions of the answer criticised are not "so unrelated to the complainant's claim as to be unworthy of any consideration as a defence." The result is that the motion to strike out the paragraphs of the answer

of the New Jersey Lime Company specified in the notice will be denied.

*Mr. Theodore Simonson,* for the respondent.

*Mr. Hugh B. Reed,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Stevenson.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.

---

THE COMMONWEALTH TITLE INSURANCE AND TRUST COMPANY, trustee, et al., complainants-appellants,

*v.*

NEW JERSEY LIME COMPANY et al., defendants-respondents.

[Argued June 26th, 1916.  Decided November 20th, 1916.]

On appeal of the Bethlehem Steel Company.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell, who filed the following opinion:

As I read the statute relating to counsel fees (*P. L. 1910 p. 427*), this court is authorized to make allowances by way of