**SMYTH SALES, Inc., v. PETROLEUM HEAT & POWER CO., Inc.**

No. 7851.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 19, 1942.

Decided June 3, 1942.

698

Charles S. Barrett, Jr., of Newark, N. J. (Lum, Fairlie & Wachenfeld, of Newark, N. J., on the brief), for appellant.

George W. C. McCarter, of Newark, N. J., for appellee.

Before MARIS, CLARK, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The complaint in this action contains two counts, one for fraud and deceit and the other for malicious interference with plaintiff's business. At the close of the plaintiff's testimony the learned trial judge dismissed the action as to both counts. Previously a clause making claim for exemplary damages had been stricken from the first count. The plaintiff appeals to this Court from these rulings.

### The Claim for Deceit

The plaintiff's evidence showed the following: In 1933 the parties to this action, agreed, by written contract, that the Smyth Sales Corporation, plaintiff's predecessor,[1] should sell, exclusively, the fuel oil of the Petroleum Heat and Power Co. Inc., in a given territory. The contract further provided that it "fixes the rate of commissions to be paid on *all* fuel oil sold and delivered in the territory covered" and that it was "an exclusive agreement for the Dealer [Smyth] insofar as Essex County, New Jersey is concerned * * *."

In 1935, the president of the plaintiff saw, in his territory, the defendant's oil trucks, bearing the name of "Electrol", a rival company. On inquiry of the defendant's New Jersey manager, he was told

---

[1] The fuel oil agreement was assigned, prior to March 14, 1934, with the consent of the defendant, to the plaintiff.

that the trucks were hauling the oil of "Electrol" for a stipulated charge. Further inquiry did not elicit any information that "Electrol" was selling Petroleum's fuel oil in plaintiff's territory, but the reply thereto indicated, rather, that there was as yet no connection between the two companies.

Smyth sold defendant's fuel oil pursuant to the 1933 agreement until 1937. At that time defendant's financial representative requested a payment on account of an indebtedness due and when the Smyth firm was unable to meet this demand defendant's representative recommended that the business be sold. Upon Smyth's suggestion, the defendant expressed a willingness to purchase and after numerous negotiations the final agreement of sale was executed in 1938 at the defendant's home office in Stamford, Connecticut.

The agreement of sale recited all the monies purportedly due to date between the parties and arrived at a net indebtedness of $1,267.51 owing to the defendant. This sum was deducted from the agreed purchase price of $5,000 for the good will and the $3,732.49 balance was paid to the plaintiff.

Several months afterwards, according to his testimony, Smyth discovered that "Electrol" had been selling defendant's oil in plaintiff's former exclusive territory from 1935 to 1938 and had received commissions therefor totalling $6,925.56. Upon this evidence, has the plaintiff shown a case upon which a verdict for it for deceit could be rendered?

■ This being a case where the trial was in one state and the significant transaction in another state, it is the duty of the federal court to apply the rules of conflict of laws of the state where the litigation occurred. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Boyle v. Ward, 3 Cir., 1942, 125 F.2d 672; Anthony P. Miller, Inc., v. Needham, 3 Cir., 1941, 122 F.2d 710.

■ The New Jersey rule of conflict of laws in tort actions is the usual one

that the law of the place of wrong governs.[2] In an action for fraud and deceit, the place of wrong is the place where the loss is sustained. Restatement, Conflict of Laws (1934) § 377, n. pt. 4; 2 Beale, The Conflict of Laws (1935) § 377.2; A.B. v. C.D., D.C.E.D.Pa.1940, 36 F.Supp. 85, affirmed, 3 Cir., 1941, 123 F.2d 1017; Commonwealth Fuel Co. v. McNeil, 1925, 103 Conn. 390, 404, 130 A. 794, 800; Bradbury v. Central Vermont Ry., 1938, 299 Mass. 230, 233, 12 N.E.2d 732, 734. This point seems not to have been considered in any New Jersey decision, but in view of the position of the courts of that state upon conflict of laws rule in torts cases, we have no reason to doubt that they would follow the rule thus expressed, since it seems to be undisputed. The alleged loss here is the sale of plaintiff's business for an inadequate consideration, settlement for commissions at a sum substantially less than actually due and the damage resulting therefrom. Since the event which occasioned these losses was the execution of the contract of sale in Connecticut, reference must be had to the law of Connecticut to determine whether the plaintiff has established the substantive elements of its claimed cause of action for deceit.

■ Referring to the Connecticut decisions, we find that one of the elements plaintiff must prove in an action for fraud and deceit is a misrepresentation of a fact,[3] or its fraudulent concealment,[4] or its nondisclosure where there is duty to disclose.[5] We must determine whether the present plaintiff met any of these requirements.

■ The fuel oil agreement is the foundation of the plaintiff's claim. It does not appear where this contract was executed. But whether rights under it are determined either by the law of Connecticut or New Jersey its effect is that the Petroleum company was obligated to pay to the Smyth firm commissions on all sales of its oil by whomsoever made, which were consummated within the exclusive ter-

---

2 Friedman v. Greenberg, 1933, 110 N. J.L. 462, 166 A. 119, 87 A.L.R. 849; Ferguson v. Central R. R. of N. J., 1905, 71 N.J.L. 647, 60 A. 382; Curry v. Delaware L. & W. R. R., Sup.1938, 120 N. J.L. 512, 1 A.2d 14; Potter v. First Nat. Bank of Morristown, Ch.1930, 107 N.J. Eq. 72, 151 A. 546.

3 Barnes v. Starr, 1894, 64 Conn. 136, 150, 28 A. 980, 983.

4 Stanio v. Berner Lohne Co., 1941, 127 Conn. 431, 17 A.2d 502; Gayne v. Smith, 1926, 104 Conn. 650, 134 A. 62.

5 Watertown Savings Bank v. Mattoon, 1905, 78 Conn. 388, 62 A. 622; West v. Anderson, 1831, 9 Conn. 107, 110, 21 Am.Dec. 737.

ritory.[6] The defendant, therefore, according to plaintiff's evidence, owed the plaintiff in addition to the $1,267.51 recited in the agreement of sale, $6,925.56, the admitted commissions on sales in Essex County, by "Electrol" or a total of $8,193.07. We believe a buyer is misrepresenting a fact within the meaning of Connecticut law when, as a step towards the consummation of an agreement of sale and in order to determine the final purchase price, he settles the accounts outstanding between himself and the seller and subscribes to an agreement of sale which recites, as due the latter, a sum substantially less than the amount owing, a fact which he knows, and of which the seller is justifiably unaware.[7] Such is the case here, on the plaintiff's evidence.

■ However, in the event that the conduct of defendant's agents should be considered, under Connecticut law, as falling short of an out and out misrepresentation, or positive concealment of a material fact, we are prepared to predicate liability on the theory that the defendant was under a duty, arising out of the relation of the parties as a result of their contract, to disclose the commissions due the plaintiff on the "Electrol" sales.

■ Exclusive sales agreements have been variously construed as creating an agency or a buyer and seller relationship.[8] In most of the cases found there was not the relation of principal and agent in the ordinary sense of that term but the grant by a distributor (who was a manufacturer or wholesaler) to a distributee (a wholesaler or retailer) of an exclusive right to sell products of the former. This is the situation in the case at bar. However, the resultant relationship is not totally devoid of attributes which the law imposes upon parties in the relation of principal and agent. In other words the duties of mutual trust, confidence and loyalty so far as the subject matter of their dealing are concerned are applied to the parties to an exclusive sales transaction.[9] The parties

---

6 There is no case directly on point in either state. However there are cases in both jurisdictions which allow a broker, who has the exclusive right to sell, to recover the commissions he would have earned, had he effected the sale which the owner made. Firszt v. Wdowiak, 1926, 104 Conn. 744, 133 A. 586; Harris v. McPherson, 1922, 97 Conn. 164, 115 A. 723, 24 A.L.R. 1530; Martin Realty Co. v. Fletcher, Sup.1927, 103 N.J.L. 294, 136 A. 498. These indicate that the courts of New Jersey and Connecticut would reach a similar conclusion in interpreting this contract.

7 Compare, Commonwealth Fuel Co. v. McNeil, 1925, 103 Conn. 390, 130 A. 794 (misrepresentation as to financial worth of a business, thereby inducing surrender of a contract); O'Neill v. Conway, 1914, 88 Conn. 651, 92 A. 425 (misrepresentation as to quantity of land sold); Shelton v. Healy, 1901, 74 Conn. 265, 50 A. 742 (misrepresentation as to earnings of a business in sale of stock of that business); Wilson v. Nichols, 1899, 72 Conn. 173, 43 A. 1052 (misrepresentation as to value of inheritance sold).

8 Agency: Terre Haute Brewing Co., Inc., v. Dugan, 8 Cir., 1939, 102 F.2d 425; Bell v. Viavi Co., 1929, 4 W.W. Harr., Del., 176, 146 A. 605; Allegheny By-Product Coke Co. v. J. H. Hillman & Sons Co., 1922, 275 Pa. 191, 118 A. 900. Sales: Banker Bros. Co. v. Commonwealth of Pennsylvania, 1911, 222 U.S. 210, 32 S.Ct. 38, 56 L.Ed. 168; Jaeger Machine Co. v. L. B. Smith, Inc., 1941, 144 Pa.Super. 488, 19 A.2d

750; Huselton v. Eddie Bald Motor Car Co., 1923, 81 Pa.Super. 526.

9 The dual nature of the resultant relationship has been recognized by some of the cases. Ken-Rad Corp. v. R. C. Bohannan, Inc., 6 Cir., 1935, 80 F.2d 251, 254, construed the relationship generally as one of sale, but for the purposes of commissions as one of agency. Again, it is said: "Under the terms of the contract, the relations of principal and agent were coexistent with that of buyer and seller. The contract had a double aspect. In one respect it created a relation of principal and agent, and in another it contemplated, as between the parties, purchases and sales. * * * The contract called for fidelity in carrying out the terms of the contract, and it was therefore important to have the jury understand the requirement of complete fidelity, which was owing by the agent to its principal * * *." Champion Spark Plug Co. v. Automobile Sundries Co., 2 Cir., 1921, 273 F. 74, 80. In E. H. Taylor, Jr., & Sons v. Julius Levin Co., 6 Cir., 1921, 274 F. 275, 278, 282, the court said, "In the present contract, as to its executory portions, the continuing dependence of each upon the integrity and faithfulness of the other necessarily subjects it to the same rules in the respect now under consideration as are applied to strict contracts of agency." The distributor, here, terminated the contract because the distributee had violated the law in conducting his business and padded his accounts.

are not, as ordinary vendor and vendee, dealing at arm's length. They have, of their own accord, agreed to conform to a peculiar but mutually advantageous arrangement. We believe that this relationship requires full disclosure by the parties of all facts pertinent to the exclusive sales provision, and that the decisions cited above support this view of the relation.

This again, however, is a matter of state law. What state? We do not know where the original exclusive dealer contract was made. We do know that the business was carried on by the plaintiff in New Jersey and that the defendant's place of business was in Connecticut. Anything which either of these parties had to do with the contract would necessarily be done in one of these two states and no other law, therefore, would seem a relevant reference. We need not now decide which law measures the obligations of the relationship, in case the two states differ. In neither state is there case law directly in point. In each there are decisions recognizing the duty of disclosure in instances of confidential relationship.

Connecticut imposes a duty to disclose where "the party not disclosing was called upon by the other party to disclose, or his relation to that party was such as to make it his legal or equitable duty to disclose, all material facts." Watertown Sav. Bank v. Mattoon, 1905, 78 Conn. 388, 393, 62 A. 622, 624. Accordingly, one case has held that the promoter of a corporation is under a duty to disclose secret profits derived from a sale to the corporation and sanctioned the existence of that duty between partners, principal and agent, and attorney and client. Yale Gas Stove Co. v. Wilcox, 1894, 64 Conn. 101, 127, 29 A. 303, 310, 25 L.R.A. 90, 42 Am.St.Rep. 159.

New Jersey will impose a duty to disclose where there is a confidential relationship between the parties or other circumstances which will create this duty. Crowell v. Jackson, 1891, 53 N.J.L. 656, 23 A. 426; Becker v. Kelsey, Sup.1931, 157 A. 177, 9 N.J.Misc. 1265. Although the Crowell case held that a corporate officer need not disclose special facts affecting the value of stock which he, as an individual, purchased from a shareholder-seller, we believe that the relationship of the parties in this case is more akin to the one between the litigants in Rosenbaum v. United States Credit System Co., Sup.1899, 64 N.J.L. 34, 38, 44 A. 966, 968 (reversed on other grounds, 1901, 65 N.J.L. 255, 48 A. 237, 53 L.R.A. 449), and in Gubelman Publishing Co. v. Ryerson, 1933, 110 N.J.L. 138, 164 A. 292. In the former, the court suggested that an action for fraud and deceit could be maintained because an insurance company failed to disclose to its prospective agent that the law of the state comprising his territory prohibited the sale of the particular insurance involved. The Gubelman case held that the failure of an agent to disclose to his principal another contemporaneous employment was a violation of his duty.

Having thus looked to the law of Connecticut and New Jersey, we believe that the law of either state would sanction a construction of the fuel oil agreement which imposes a duty of full disclosure upon the defendant as to the commissions due plaintiff on the "Electrol" sales. The broker cases confirm this conclusion. We so hold.

In addition to a misrepresentation or non-disclosure, plaintiff must show "that it [the representation] was untrue, and known to be untrue by the party making it, and it was made for the purpose of inducing the other party to act upon it; and that the party to whom the representation was made was in fact induced thereby to act to his injury." Barnes v. Starr, 1894, 64 Conn. 136, 150, 28 A. 980, 983. The evidence presented discloses that the agents of the defendant knew that "Electrol" was selling in plaintiff's exclusive territory. It was also shown that they knew the reason Smyth sold his business was because of a lack of working capital, and that the "Electrol" commissions which were due to plaintiff, if paid, would have remedied this condition. He testified that had he been aware of the true state of accounts, he would not have sold his business. We think that a jury reasonably could find on this evidence the elements required by the law of Connecticut to maintain an action for fraud and deceit, and the dismissal on this count was therefore error.

## Malicious Interference With Business

The plaintiff's second count does not fare so well. It seeks recovery for malicious interference with plaintiff's business. This is predicated upon defendant's alleged arrangement with "Electrol" to sell fuel oil in the plaintiff's exclusive territory, paying commissions to "Electrol" on these sales and failing to account for them to the plaintiff, all of which acts were in viola-

tion of the contract between the parties. We think there is no merit to the plaintiff's claim on this count.

 Whatever the acts are which are supposed to support this claim, they occurred in New Jersey, whose law is applicable thereto. It is well settled in that state that "Notwithstanding some exceptional and anomalous instances, the general proposition stands that 'the mere nonperformance of a promise' does not constitute a tort."[10] This case is neither an exception nor an anomaly and the general rule should clearly apply. To hold otherwise, would result in every breach of contract giving rise to an action for malicious interference with a business relationship. The ruling of the trial judge upon this point was correct.

## Exemplary Damages Claim

 There remains only the question of whether the court below properly struck out the clause seeking punitive damages under the first count. Again we must decide the New Jersey rule of reference and in the absence of a case on point we apply the general rules of conflict of laws. The measure of damages, compensatory or exemplary, in tort actions, is determined by the law of the place of wrong, except that in some instances the forum may not allow exemplary damages even though allowed by the law of the state where the wrong occurred because the forum considers them penal. Restatement, Conflict of Laws (1934) §§ 412, 421; 2 Beale, The Conflict of Laws (1935) §§ 412.2, 421.1; Goodrich, Conflict of Laws (2d Ed.1938) 213. Connecticut allows exemplary damages to be recovered against either an individual or a corporate defendant in cases appropriate for their recovery. Maisenbacker v. Society Concordia, 1899, 71 Conn. 369, 378, 42 A. 67, 69, 71 Am.St.Rep. 213. New Jersey law permits recovery of punitive damages also, and subject to some limitations unnecessary to examine here, against corporate as well as individual defendants. Hoboken Printing & Publishing Co. v. Kahn, 1896, 59 N.J.L. 218, 35 A. 1053, 59 Am.St.Rep. 585; Peterson v. Middlesex & Somerset Traction Co., 1904, 71 N.J.L. 296, 59 A. 456. There is little reason for supposing that a New Jersey court would consider exemplary damages penal, therefore,

merely because they arise under a foreign law. Thus, upon the retrial of this case, exemplary damages may be had, if the circumstances surrounding the commission of the tort fall within the rule of Connecticut cases which allow such damages.

The judgment of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

CLARK, Circuit Judge, took no part in the decision of this case.

---

[10] Commonwealth Title Ins. & Trust Co. v. New Jersey Lime Co., 1916, 86 N.J.Eq. 450, 454, 100 A. 52, 53.