**LOEW'S, INC., Plaintiff,**

v.

**Alexander Lloyd ROYAL, Defendant.**

**Civ. A. No. 1000.**

United States District Court
S. D. Mississippi, E. D.

Feb. 16, 1966.

Earl T. Thomas, Jack W. Brand, Wells, Thomas & Wells, Jackson, Miss., and Sargoy & Stein, New York City, for plaintiff.

deQuincy V. Sutton, Meridian, Miss., for defendant.

RUSSELL, District Judge.

This diversity of citizenship action was filed in 1959 by Loew's, Incorporated, now M.G.M., a motion picture distributor, at the same time as actions by two other distributors, all three suits being against Alexander Lloyd Royal, individually and doing business under the name and style of Royal Theatres, who exhibited plaintiff's pictures at various of his theaters. The suits have not been consolidated. The complaint herein seeks to recover damages "in excess of $10,-000.00" for incorrect, false and fraudulent under-reporting of gross admission receipts by defendant from three theaters beginning January 1, 1953, together with interest and costs. Defendant filed a motion to dismiss, asserting among other grounds, that the complaint fails to establish that the amount in controversy exceeds the jurisdictional amount of $10,-000.00. This motion was overruled, and defendant filed his answer of general denial. Plaintiff moved for production of documents under Rule 34 of the Federal Rules of Civil Procedure, supported by a lengthy affidavit to the effect that the furnishing of records in the possession and control of defendant was necessary for plaintiff's proof. While this motion was pending, and after plaintiff filed answers to defendant's interrogatories, earlier requested, defendant moved to revive his motion to dismiss. The same District Judge, who overruled the original motion to dismiss, overruled the motion to revive, and sustained plaintiff's motion under Rule 34. Over a year later, defendant having not complied with the order of the Court to produce the documents, plaintiff secured an order from a second District Judge, then sitting, requiring defendant to produce same under penalty of arrest and default judgment, damages to be determined on proof. After authorizing plaintiff to secure certain of the documents from taxing and banking authorities, defendant refused to answer questions concerning same, and the second District Judge ordered him to do so and directed that he pay the sum of $250.00 in plaintiff's attorney fees. Thereafter, defendant again filed a motion to dismiss, alleging lack of jurisdictional amount, which motion was overruled by the aforesaid second District Judge. Prior to trial, defendant filed his fourth motion to dismiss for lack of jurisdiction and at the trial orally renewed this motion, which I, as the third District Judge to sit on the case, orally denied along with a denial of defendant's motion for jury trial. Because of defendant's repeated insistence that plaintiff's allegation of required jurisdictional facts was spurious, and because as hereinafter shown, plaintiff did indeed fail to show damages of more than the jurisdictional amount, and with all respect to the previous judges who considered defendant's motions at various times dur-

ing the pleading skirmishes prior to trial, I feel it incumbent to consider the matter in detail. In two other cases on similar causes of action, Columbia Pictures Corporation v. Rogers (1949), D.C., 81 F. Supp. 580, and Columbia Pictures Corporation v. Grengs (1958), 7 Cir., 257 F.2d 45, wherein plaintiffs alleged damages in excess of the jurisdictional amount, at the same time pleading, as here, their inability to compute the exact amount of damages, such being based on facts peculiarly within the knowledge of defendants, both federal courts retained jurisdiction. In the Grengs case, the Court stated: "Obviously sham allegations and mere pretense should be penetrated when challenged, but the plaintiff need not twice establish his proof of value—once before trial on the merits and later on the merits when issues are joined under complaint and answer. Mere pretense of the disputed amount is one extreme in contrast with a jurisdictional claim appearing to be made in good faith." The Court then quoted from Mr. Justice Roberts in St. Paul Mercury Indemnity Co. v. Red Cab Company, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845, which held: "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." And as stated in Wade v. Rogala (1959), 3 Cir., 270 F.2d 280: "The necessary choice, except in the flagrant case, where the jurisdictional issue cannot be decided without the ruling constituting at the same time a ruling on the merits, is to permit the cause to proceed to trial." In the case before me, plaintiff charges defendant with fraudulent under-reporting of admission receipts from movies shown in defendant's theaters over a period of six years. If true, the under-reporting was in large measure based on facts not within the knowledge of plaintiff until obtained through the discovery procedures of the federal courts, which due to defendant's reluctance, took several years to accomplish, at considerable cost of time and expense to plaintiff. From a complete review of the record in this cause prior to trial, I do not find that plaintiff's allegation of necessary jurisdictional facts was made in bad faith, and I accordingly overrule both of defendant's pending motions to dismiss, written and oral.

The gist of plaintiff's allegations is that plaintiff, as a distributor of motion pictures, licensed to defendant the right to exhibit motion pictures in defendant's theaters. The fee payable to plaintiff was an amount determined by a percentage of gross admission receipts. Plaintiff charged that defendant, on some pictures, reported to plaintiff gross admission receipts less than that shown on defendant's own books, and also designed a scheme to defraud plaintiff by under-reporting other gross admission receipts, plaintiff claiming that it relied on such false reports to its damage by accepting less film rentals on the percentage pictures than if the true gross receipts had been reported. Each time a picture was licensed by plaintiff to defendant, it was evidenced by an "Exhibition Contract" on which the name of the picture and rental percentage were designated, and which provided, inter alia, that the exhibitor was to use serially numbered tickets, sold consecutively, and that all money accruing to plaintiff as its share of the receipts was to be held in trust for the plaintiff.

Plaintiff's accountant who for many years has audited hundreds of similar accounts, and, who, on the basis of documents in the possession of plaintiff, together with other documents and records obtained through discovery procedures, undertook to show through various accounting methods and comparisons the monetary damage suffered by plaintiff as a result of its contractual relation with defendant.

As to six pictures, the gross admission receipts as reported to plaintiff compared with the receipts shown in defendant's

own books, reveals an actual under-reporting of $545.95, which defendant does not dispute; applying the percentage rates of each film to this figure the sum of $204.83 as additional film rental is due plaintiff on these six films.

It was the custom of defendant to deposit each day to a tax account for each of his three theaters, a percentage of the daily receipts equal to the applicable state admission tax. Although defendant contended that the tax accounts also included a similar percentage of "other receipts," identified as rentals and ads, the accounting comparisons, together with defendant's tax records and deposit slips, showed all too clearly that the deposits were actually a reflection of gross admission receipts. By this method, defendant owes additional rentals in the sum of $1,679.05.

For the period April 1, 1954, through April 30, 1955, defendant deposited 5% of receipts to the aforesaid tax accounts during which period state admission taxes were only 2%. By similar comparisons, defendant during this period under-reported gross admission receipts from film exhibitions, on which the rental percentage due plaintiff is the sum of $754.37.

■■■ The under-reporting of defendant was plaintiff's burden to prove. However, this need not be done by direct evidence, particularly where such evidence is not available to plaintiff; it may be shown by circumstances and the legitimate inferences reasonably drawn from the relationship of the parties and the documents which were produced in evidence. If the reconstructed under-reporting was based on no more than inferences, they were sufficient to place the burden on defendant to explain why they were not true. I am convinced that the accounting tests run on the figures supplied in great part from defendant's own records proved plaintiff's theory clearly and convincingly. The pattern was projected mathematically and cross-tested to a degree of accuracy more than could possibly be disparaged on the basis of defendant's contention that the variations were due to "other receipts." Neither will defendant's contention that "breaks" in the serially numbered tickets were due to free tickets and midnight shows suffice, when again, under the terms of their contract, such were also due to be reported to plaintiff in order to satisfactorily account for such "breaks." As so aptly stated in Sovereign Camp, W.O.W. v. Boykin, 182 Miss. 605, 181 So. 741: "When a party is entitled to inquire of another, and the position of that other is such as to require of him a response, which is the case here, the respondent is guilty of fraud if he make any material misrepresentation knowing it to be such, or if he conceal any material fact, which misrepresentation or concealment he should reasonably have anticipated would be, and in fact, was, relied upon by the inquirer to his hurt and to the profit or advantage of the respondent." Also see Smyth Sales v. Petroleum Heat & Power Company, 3 Cir., 128 F.2d 697.

■■■ As to interest claimed by plaintiff on the unreported film rentals, this should be allowed. Van Zandt v. Van Zandt, 227 Miss. 528, 86 So.2d 466.

I find that plaintiff should have judgment against defendant for unpaid film rentals in the sums of $204.83, $1679.05 and $754.37, for a total of $2638.25, with interest at 6% computed annually from the respective due dates of such rentals, and the sum of $250.00 heretofore assessed against defendant.

Let an appropriate order containing these findings and interest computations be submitted, with costs to be taxed to plaintiff.